**ORANGE COUNTY, INC., Appellant,**

v.

**CITGO PIPELINE COMPANY, Appellee.**

No. 09–95–350 CV.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 19, 1996.

Decided Dec. 12, 1996.

Rehearing Overruled Jan. 10, 1997.

---

4. Albeit in the treble damages context.

**474**

Walter C. Brocato, Law Offices of Anthony G. Brocato, Beaumont, for appellant.

Phil Dunlap, J. Mitchell Smith, Wells, Peyton, Beard, Greenberg, Hunt and Crawford, Beaumont, for appellee.

Before WALKER, C.J., and STOVER and JOHN HILL,[1] JJ.

## OPINION

JOHN HILL, Justice (Assigned).

Orange County, Inc. brought this lawsuit against Citgo Pipeline Company seeking a mandatory injunction for removal of Citgo's pipeline that is contained in an easement running across Orange's land and seeking fair rental for the use of its land. Orange appeals from the trial court's granting of a summary judgment that it take nothing and from the accompanying order denying its motion for partial summary judgment. It contends in four points of error that the trial court erred by granting Citgo's motion for summary judgment and denying Orange's own motion for partial summary judgment because the pipeline easement in question is not partially assignable or divisible as a matter of law, so that Citgo's attempt, upon conveying the easement to another party, to

reserve a ½ interest in the easement is invalid.

We affirm because the trial court did not err in granting Citgo's motion for summary judgment and in denying Orange's motion for partial summary judgment, for reasons expressed in this opinion.

In response to Orange's petition seeking removal of its pipeline and seeking fair rental for the use of the land, Citgo filed a motion for summary judgment on the basis that its easement allows partial assignment; that even if it did not, the assignment in question would not terminate its easement rights; and that in any event Orange has no justiciable claim against it apart from the rights of the pipeline company to which Citgo assigned its interest in the 12″ pipeline in question.

The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

Orange's predecessor-in-title granted to Citgo's predecessor-in-interest an express easement across its property in 1943 for the construction, maintenance, and operation of pipelines, among other things. A 12″ pipeline was constructed through the easement. In 1952, after Citgo had acquired the easement in question, Orange's predecessor granted Citgo an easement for the construction, maintenance, and operation of pipelines, more carefully defining the area included within the easement. This easement also provided that the grantor would receive compensation for each additional pipeline that might be laid within the easement. A 20″ pipeline was constructed within the easement in 1952.

(Vernon 1988).

---

1. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann. § 74.003(b)

In 1987, Citgo assigned the 12″ pipeline and the easement to Cities Service NGL Pipeline Company, now known as Trident. Under the terms of the assignment, Citgo reserved to itself an undivided ½ interest in the easement. Citgo did not assign any interest in the 20″ pipeline. Orange subsequently obtained title to the property underlying the easement in question, then brought this suit.

Orange's suit for injunction for removal of the pipeline and for fair rental value is premised upon the assumption that Citgo lost its easement for its 20″ pipeline as a result of the 1987 assignment and that as the owner of the underlying property it has the right to have the pipeline removed and to recover fair rental value for the use of its land by the pipeline.

■ At the time of the 1987 easement, Citgo was operating both pipelines, the 12″ and the 20″, within the easement. It is undisputed that it had the right to do so. Orange contends that Citgo's attempt in 1987 to reserve a ½ interest in the easement was invalid because the easement could not be partially assigned.

It is undisputed that Citgo could have lawfully assigned all of its easement rights to Cities Service. With respect to partial assignments of such an easement, the more modern view in commercial easements is that such an easement is partially alienable where it does not burden the underlying land beyond what was contemplated in the original easement grant. *See* Alan David Hegi, *The Easement in Gross Revisited: Transferability and Divisibility Since 1945,* 39 Vand. L.Rev. 109, 130–31 (1986); and RESTATEMENT OF PROPERTY, § 493, (American Law Institute 1944).

One commentator on Texas easement law concludes that courts are inclined to accept the view that a partial alienation would be an increase in the servitude, thereby restricting such an alienation. In support of his conclusion, the commentator cites *Fort Worth & R.G. Ry. Co. v. Jennings,* 76 Tex. 373, 13 S.W. 270 (1890) and *Southwestern Bell Tel. Co. v. Texas & NOR Co.,* 125 F.2d 699 (5th Cir.1942). However, an examination of these cases shows that in each case the use com-

plained of by the landowner placed a burden on the underlying land beyond what was contemplated in the original easement grant. For that reason, as we explain in more detail below, we find neither of these cases to be in conflict with the modern view as set forth in the Restatement and as discussed in the Vanderbilt Law Journal article. The commentator subsequently acknowledges that there is a conflict in the Texas cases. 3A FRED LANGE & ALOYSIUS LEOPOLD, LAND TITLES AND TITLE EXAMINATION § 381 (Texas Practice 1992).

■ Based upon our review of the authorities, we conclude that Texas follows the view that such easements are alienable where the resulting use does not burden the underlying land beyond what was contemplated in the original easement grant.

In support of its view that Texas law does not permit the partial alienation of such an easement, Orange primarily relies on the cases of *Fort Worth & R.G. Ry. Co. v. Jennings, supra; Southwestern Bell Tel. Co. v. Texas, supra; Houston Pipe Line Co. v. Brown,* 361 S.W.2d 884 (Tex.Civ.App.— Houston 1962, writ ref'd n.r.e.); and *Houston Pipe Line Co. v. Dwyer,* 374 S.W.2d 662 (Tex.1964). We find all four of these cases to be distinguishable from the case at bar.

In *Fort Worth & R.G. Ry. Co. v. Jennings,* the Texas Supreme Court held that where one railroad company had an easement for the operation of a railroad it could not grant another railroad the right to operate another rail line within the easement without the consent of and compensation to the landowner, and that the landowner could obtain injunction of the operation of the second line until it received compensation. *Fort Worth,* 13 S.W. at 272. We find this case to be distinguishable because in the railroad case the easement did not contemplate the building of more than one railroad line, and the landowner was not being compensated for the additional line, whereas in this case the building of more than one pipeline was contemplated in every relevant easement and because an agreement is in place under which Orange receives compensation for the additional pipeline.

In *Southwestern Bell. Tel. Co. v. Texas N.O.R. Co.*, Southwestern Telegraph and Telephone Co. obtained an easement through condemnation proceedings, then transferred its rights under the easement to Southwestern Bell. *Southwestern Bell Tel. Co.*, 125 F.2d at 699–700. The judgment in the condemnation proceeding provided that Southwestern Telegraph and Telephone would have an easement on the railroad's right of way for the purpose of building, operating and maintaining thereon *its* telegraph and telephone lines. *Id.* at 700 (emphasis added). Southwestern Bell leased space on its poles to another telephone company. Judgment for an injunction and for the value of the use of the land was affirmed on the basis that the condemnation judgment did not authorize such a use. By contrast, the original easement in this case authorized the construction of pipelines and appurtenances by the grantee, its successors and assigns. Neither it nor the subsequent amendment of the easement contains language limiting the operation of pipelines solely to those operated by the grantee.

*Houston Pipe Line Company v. Brown* involved a discussion of a condemnor's right to dismiss its condemnation action and evidence relating to a defense of statute of limitations with respect to the operation of a pipeline. *Houston Pipe Line Co.*, 361 S.W.2d at 886–88. Neither issue is related to the issue before this court in this case. Orange refers to the opinion as support for its claim that it is entitled to an injunction for removal of the pipeline, but in that case there is no indication that the pipeline was located within an easement at all, and the pipeline company voluntarily agreed to remove the pipeline. *Id.* at 887.

In *Houston Pipe Line Co. v. Dwyer,* the court upheld a judgment declaring that an easement for constructing, maintaining, replacing, removal, etc. of a pipeline terminated when the pipeline company removed the pipe that it had built on the easement and substituted a larger pipe for it. *Dwyer,* 374 S.W.2d at 666. The court held that where the easement did not provide for the size of the pipe under the easement that the size became fixed when the pipeline was constructed and could not thereafter be replaced with a substantially larger pipe. *Id.* In this case the easement specifically provides for multiple pipelines, and the landowner receives compensation for each additional pipeline.

Orange urges that the easement is not an exclusive easement so that the apportionability of the easement will not be assumed in the absence of a clear indication to the contrary in the manner or terms of its creation. It relies on Comment d of § 493 of the Restatement of Property, *supra.*

 The easement in question is an easement in gross, as opposed to an easement appurtenant, because it is not created to benefit nor does it benefit the possessor of any tract of land in his use of it as such possessor. *Id.,* § 454. An exclusive easement in gross is one that gives the owner the sole privilege of making the uses authorized by it. Neither the owner of the servient estate nor any other person except the owner of the easement is entitled to make such a use. *Id.,* § 493. "Though apportionability may be to the disadvantage of the possessor of the servient tenement, the fact that he is excluded from making the use authorized by the easement, plus the fact that apportionability increases the value of the easement to its owner tends to the inference in the usual case that the easement was intended in its creation to be apportionable. This inference is very strong in cases where an increase in use is in fact advantageous to the possessor of the servient tenement." *Id.*

 On the other hand, a nonexclusive easement in gross is "one which does not give, as against the owner of the servient tenement and others who may be privileged under him, the sole privilege of making the use authorized by the easement. In the case of such an easement the owner and possessor of the servient tenement has not only the privilege himself to make the use authorized by the easement, but he retains the power to create like privilege in others." *Id.*

 Both of the easement grants in this case contain language that retains in the grantor the full use and enjoyment of the premises, *"except for the purposes hereinbe-*

*fore granted to the said Grantee ...*" (emphasis added). Because Orange did not retain the use of the premises for pipeline purposes, we conclude that the easement in question is an exclusive easement.

■ Under this exclusive easement, Orange receives payment for every additional pipeline. Consequently, the increase in use is advantageous to it. Therefore, as previously noted, there is a strong inference that the easement was intended in its creation to be apportionable. *Id.* We find this authority from the *Restatement of Property* to be consistent with the principles of law as previously set forth in this opinion.

It may be that if the additional ownership of the easement had created some kind of burden on the owner of the underlying land, then the owner would be entitled to relief. However, in this case, the landowner presented nothing in its response to Citgo's motion for summary judgment indicating that there was any additional burden caused by the division of the ownership of the easement, and there is no summary judgment evidence indicating that there was.

■ Orange is not entitled to either an injunction or to fair rental damages because, at least as to it, Citgo's pipeline is located within a valid easement, either its own or that of Trident, or an easement owned jointly by the two. Additionally, as previously noted, the summary judgment evidence does not reflect that the division of the easement caused any additional burden to the underlying landowner. Consequently, the trial court did not err in granting Citgo's motion for summary judgment and in denying Orange's motion for partial summary judgment. We therefore overrule all of Orange's points of error.

The judgment is AFFIRMED.