Alan KROHN, et ux., Appellants,

v.

MARCUS CABLE ASSOCIATES, L.P., Appellee.

No. 10–99–244–CV.

Court of Appeals of Texas, Waco.

March 14, 2001.

Brett L. Bigham, Waxahachie, for appellant.

William P. Johnson, Baker Botts, L.L.P., Dallas, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

TOM GRAY, Justice.

This case is about an individual's rights in real property. It involves the question of a cable television company's right to use an easement granted to an electric cooperative. The parties agree that the cable television company has attached its cable

to the poles of the electric cooperative. They further agree the electric cooperative has a valid easement to have the poles on the property. They also agree that the electric cooperative validly contracted with the cable television company for the right to use the poles. There is some dispute whether the television cable is too low, thus, interfering with the use of the property.

The trial court determined the cable television company had a right to enter upon the property and attach its cable to the cooperative's poles within the easement and granted summary judgment in favor of the cable television company. Because we hold the electric cooperative's easement was limited by the terms of its grant and that the grant did not extend the use for other purposes, we reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

Alan and Myrna Krohn own an 11.764 acre tract of land in Ellis County. The property is burdened by an easement granted by a prior owner to the Hill County Electric Cooperative. That easement allows the Cooperative to:

> place, construct, operate, repair, maintain, relocate and replace thereon and in or upon all streets, roads or highways abutting said land an electric transmission or distribution line or system, and to cut and trim trees and shrubbery to the extent necessary to keep them clear of said electric line or system and to cut down from time to time all dead, weak, leaning or dangerous trees that are tall enough to strike the wires in falling.

At some point, Marcus Cable Associates, L.P. went onto Krohn's property and attached television cables to the Cooperative's poles. Krohn sued Marcus, claiming that the entry onto the property was without permission and was not supported by any other legal right.

Krohn filed a motion for partial summary judgment, asking that the court render judgment that Marcus did not have the right to enter on the property and ordering it to move its cable, but reserving the issue of monetary damages for another day. Marcus filed a response and also filed its own motion for summary judgment, asking that the court dismiss Krohn's suit because it was legally entitled to use the property. Marcus based its motion for a summary judgment on two theories. First, it argued that Section 181.102 of the Texas Utilities Code authorized it, as an entity in the business of providing cable television service to the public, to install its equipment within the easement on the property. TEX.UTIL.CODE ANN. § 181.102(a) (Vernon 1998). Alternatively, Marcus argued that the existing easement was apportionable and that it had been properly assigned the right to use the easement by the Cooperative, the owner of the easement rights. Krohn responded to Marcus's motion, arguing that section 181.102 does not apply to private property and that the easement could not be apportioned as a matter of law and was not apportioned properly as a matter of fact. In its order granting the motion and rendering judgment against Krohn, the court specifically relied on both theories advanced by Marcus.

## TEXAS UTILITY CODE SECTION 181.102

Marcus claimed that it was entitled to place its cable within the Cooperative's utility easement by virtue of Section 181.102, which provides, in full:

181.102. Authority to Install and Maintain Equipment

(a) In an unincorporated area, a person in the business of providing community antenna or cable television service to the public may install and maintain equipment through, under, along, across, or over a utility easement, a public road, an alley, or a body of public water in accordance with this subchapter.

(b) The installation and maintenance of the equipment must be done in a way that does not unduly inconvenience the public using the affected property.

TEX.UTIL.CODE ANN. § 181.102. Krohn argues that the statute should be construed to apply only to public lands, and, so, does not apply to easements on private property. Marcus argues in reply that the plain language of the statute does not limit its application to public lands. We have determined that neither is entirely right, nor entirely wrong.

When a statute is clear and unambiguous, we apply its common meaning. *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997); *also Texas Ass'n of School Boards, Inc. v. Ward,* 18 S.W.3d 256, 259 (Tex.App.—Waco 2000, pet. filed). Furthermore, "every word of a statute must be presumed to have been used for a purpose [and] every word excluded from a statute must also be presumed to have been excluded for a purpose." *Laidlaw Waste Systems (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 659 (Tex.1995). Thus, we must assume that the Legislature intentionally used the word "public" in parts of the statute but not in others. *Id.; In re Estate of Huff,* 15 S.W.3d 301, 306 (Tex.App.—Texarkana 2000, no pet.). The Code Construction Act states that "it is presumed that: (1) compliance with the constitutions of this state and the United States is intended; ..." CODE CONSTRUCTION ACT § 311.021(1).

In 1983, when the Legislature passed Section 181.102, putting cable television in unincorporated areas was relatively new. Cable television had been in municipalities for a number of years. In an incorporated area, by ordinance, the city could grant to a cable company the right to use utility easements that had been dedicated to the general public. *See Clark v. El Paso Cablevision, Inc.,* 475 S.W.2d 575 (Tex.Civ. App.—El Paso 1971, no writ). In *Clark,* the court stated:

> The easement was created by the developer dedicating the five (5) foot strip to the use of the public. Acting for the public, the City allowed the Plaintiff the use of the easement. Plaintiff's right to the use of the easement comes from the dedication, and its rights to use the poles comes from the Electric Company.
>
> * * *
>
> Having considered the broad general nature of the original easement, the dedication of which was made to the public, and thereafter the grant of the franchise [to the cable company] by the City of El Paso, acting for the public, the trial Court was correct in granting the temporary injunction.

*Id.* at 577–578.

In an unincorporated area there is no city council to consider and determine if a cable television company should be allowed to use "utility easements." By statute, the legislature filled this void and specifically authorized cable television companies to use utility easements. TEX.UTIL.CODE ANN. § 181.102. This creates general uniformity across the state in all unincorporated areas. This is the same authority exercised by a municipality within the incorporated areas of the state. *See id.* at 578.

An easement is expressly limited by the granting clause that creates the easement. *DeWitt County Elec. Co-op., Inc. v. Parks,* 1 S.W.3d 96, 103 (Tex.1999). To construe the statute as Marcus would

have us construe it would mean that the Legislature has granted to every cable television company the right to use every existing easement in all unincorporated areas of the state granted to any utility, regardless of the express terms of the deed creating the easement.

■■■ To so construe the statute would be to burden the servient estates to an extent greater than the original grant. This added burden would constitute a taking of the grantor's property. The statute does not provide for, or require, the payment of compensation. Thus, to construe the Utility Code as Marcus would have us construe it would be to construe it as an unconstitutional taking of a private citizen's property without just compensation. Regardless of the benefits that cable television may provide to consumers, the Legislature may not take private property for public benefit without complying with the constitutional requirement of providing "just" compensation. *See* U.S. Const. amend V (uses the term "just" compensation); *also* Tex. Const. art. I, § 17 (uses the term "adequate" compensation). The Code Construction Act requires that we construe a statute as constitutional if it can be so construed and still effect the legislative intent. *See* Code Construction Act § 311.021; *see also Bush v. State,* 628 S.W.2d 270, 271 (Tex.App.—Amarillo 1982, pet. ref'd).

In this case, there is a much more plausible construction than that offered by Marcus. We believe there is a very real distinction between an easement granted to a utility and the term "utility easement" as used in the statute. Hill County Electric Cooperative is a utility. However, the easement granted to the Cooperative is very limited. The easement in this case is expressly limited to an easement for "... an electric transmission or distribution line or system.... In granting this easement it is understood that at [each] pole location, only a single pole and appurtenances will be used, and that all poles and guys will be placed so as to form the least possible interferences to farm operations." This is clearly distinguishable from the general grant of a "utility easement" which would be for the use of any recognized utility.[1]

■■■ It is clear that the Legislature was concerned about whether cable television companies would be allowed to use "utility easements." By this statute, it removed any question that if there was a general dedication of a utility easement in an unincorporated area of the state, a cable television company could use that easement. The use of such a utility easement by a cable television company ordinarily imposes no greater burden on the servient estate than the grantor had originally contemplated. In this manner, the Legislature was "acting for the public" by adopting for the unincorporated areas of the state the same rule that El Paso had adopted for its residents. *Clark v. El Paso Cablevision,* 475 S.W.2d at 578.

■■■ We observe that this construction is in harmony with the dicta in *Inwood* relied upon by Marcus. *Inwood West Civic Ass'n v. Touchy,* 754 S.W.2d 276, 277 (Tex.App.—Houston [14th Dist.] 1988, orig. proceeding). In *Inwood,* the court observed that the predecessor to section 181.102 "gives cable television companies free access to utility easements across private property for the installation of their

---

1. We do not reach the question of whether a utility may use a "utility easement," dedicated as part of a recorded plat, for placement of major transmission facilities as opposed to distribution lines for the area platted. Such a determination would depend upon the express language of the grant and the intent of the grantor and is unnecessary to the disposition of this case.

equipment." Under our construction, Section 181.102 would allow all persons "in the business of providing community or cable television service" to use "utility easements" in unincorporated areas that cross private property when the use of those easements has not been specifically limited to certain utilities or certain uses. This will most often be utility easements where the grantor has recorded a plat of a subdivision and dedicated certain areas as "utility easements" so that utility companies may enter upon and place their distribution lines in certain designated areas to service the residents of the subdivision.

While the Legislature has granted certain rights to cable television companies for the purpose of this statute, it has not, even if it could, granted cable television companies the right to use every easement granted to any utility in the state. We hold that Marcus had no authority under Section 181.102 of the Texas Utility Code to enter upon and to place its cable across Krohn's property.

## APPORTIONMENT OF EASEMENTS

The trial court also granted summary judgment on the basis of the "common law of apportionment of commercial easements." Krohn also attacks this basis for the judgment. Marcus argues this is an alternative theory on which we should affirm the trial court's judgment. We disagree.

Marcus relies on *Orange County* for the principle that an owner of a lease may make partial assignments of the lease "where the resulting use does not burden the underlying land beyond what was contemplated in the original easement grant." *Orange County v. Citgo Pipeline*, 934 S.W.2d 472, (Tex.App.—Beaumont 1996,

writ denied). This authority is easily distinguishable on several basis and in fact, upon proper analysis, supports Krohn's response that the easement at issue is not apportionable.

First, as indicated above, the easement granted to the Cooperative is very limited. It expressly contemplates only "an electric transmission or distribution line or system." The terms of the express grant are singular, indicating authority to place only one electric transmission or distribution system in the easement. Thus, the placement of Marcus's cable in the same easement would be a violation of this provision of the easement as defined by the grant.[2]

■ Second, the presence of another utility using the easement is an additional burden on the servient estate. While a fact question may exist regarding whether the height of Marcus's cable interfered with the use of the property by Krohn, the legal question in this ground for the summary judgment is whether Marcus proved as a matter of law that its cable, which was mounted on the poles beneath the electric transmission lines, did not interfere with the use of the property by Krohn. Marcus failed to establish this. Marcus attempted to reverse the burden by asserting in its brief that "the Krohns have failed to present any summary-judgment evidence that the apportionment of the Hill County utility easement to Marcus constitutes any additional burden." As the non-movant, Krohn had no burden. It was Marcus's burden to prove its entitlement to summary judgment. To do this, Marcus had to affirmatively establish that the placement of its cable did not impose any additional burden on Krohn's use of the property.

---

**2.** While it is not dispositive, we note that the telephone company had placed an ariel cable within the same easement. When their authority was questioned, they rerouted their cable.

Third, even if the easement were assignable, Marcus failed to establish an assignment. The summary judgment evidence contained the "Agreement for Joint use of Electric System Poles for Television Antenna Service Attachments" between the Cooperative and Marcus.[3] The agreement is not a purported apportionment of the Cooperative's easement. It is only an agreement regarding the use of the Cooperative's poles. In fact, the agreement expressly negates the assignment of any right to use the Cooperative's easement. Article III of the agreement provides:

> The Owner [Cooperative] does not warrant or assure to the Licensee [Marcus] any right-of-way privileges or easements, and if the Licencee shall at any time be prevented from placing or maintaining its attachments on the Owner's poles, no liability on account thereof shall attach to the Owner. *Each party shall be responsible for obtaining its own easements and rights-of-way.* (Emphasis added).

And finally, the easement at issue in *Orange County* expressly provided for additional compensation to the grantor in the event an additional pipeline was added pursuant to the easement. The Cooperative's easement is a very limited grant of rights; it provides for a single electric transmission line. There is no mention of any other purpose for which the easement may be used. Cable television is not ordinarily associated with transmission of electricity. Further, even if cable television could be considered electric transmission, which we do not decide today, the easement, unlike *Orange County*, makes no provision for additional compensation to Krohn in the event additional electric transmission lines are added to the easement.

For these reasons, we believe that *Orange County* is not only distinguishable, but an in-depth analysis reveals that for all the reasons the easement at issue in that case was apportionable, the easement at issue in this case is not apportionable. We hold that Marcus had no authority under the common law of apportionment to enter upon and to place its cable across Krohn's property.

## THE KROHNS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Finally, the Krohns argue that the trial court erred when it denied their motion for partial summary judgment. Typically, the denial of a motion for summary judgment is interlocutory and unappealable. *Shaw v. Shaw*, 835 S.W.2d 232, 235 (Tex.App.—Waco 1992, writ denied). However, when both sides move for summary judgment and the court grants one but denies the other, the denial is reviewable as part of the appeal from the granted motion. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999). Absent an exception or statutory mandate, the parties must have both sought a final judgment for this rule to apply. *Pacific Mut. Life Ins. Co. v. Ernst & Young & Co.*, 10 S.W.3d 798, 810 (Tex.App.—Dallas 2000, pet. granted) (citing *Montgomery v. Blue Cross & Blue Shield*, 923 S.W.2d 147, 152 (Tex.App.—Austin 1996, writ denied) (en banc), and *Runyan v. Mullins*, 864 S.W.2d 785, 790 (Tex.App.—Fort Worth 1993, writ denied)). No exception or mandate being shown, we cannot review the trial court's denial of a motion seeking an interlocutory, partial summary judgment on appeal

---

**3.** Actually the assignment is to Marcus's predecessor in interest, but the record contains a subsequent assignment to Marcus.

from a final summary judgment. Issue six is dismissed. *Id.*

## CONCLUSION

The judgment of the trial court is reversed. This cause is remanded to the trial court for further proceedings consistent with this opinion.