Reversed and Rendered in Part and Remanded in Part and Opinion filed
October 23, 2007








 

Reversed
and Rendered in Part and Remanded
in Part and Opinion filed October 23, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01181-CV

____________

 

SOUTHTEX 66 PIPELINE COMPANY, LTD.,
Appellant

 

V.

 

JOHN SPOOR, SUSAN LYNN SPOOR, AND
CLAUDINE SPOOR, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF
DONALD EUGENE SPOOR, DECEASED, Appellees

 



 

On Appeal from the County
Court at Law No. 3 and Probate Court

Brazoria County, Texas

Trial Court Cause No. CI029587B

 



 

O P I N I O N








This
case involves land originally condemned by WesTTex Pipeline Company for an
easement to build a 12-inch oil and gas pipeline.  Several years later, WesTTex
discontinued its use of the pipeline and leased it to SouthTex 66 Pipeline
Company.  John Spoor, Susan Lynn Spoor, and Claudine Spoor, individually and as
independent executrix of the estate of Donald Eugene Spoor, deceased, sued
SouthTex, claiming that (1) SouthTex was trespassing on their property and (2)
WesTTex could not lease the pipeline to SouthTex.  Both parties brought
declaratory judgment actions on their respective claims.  The trial court severed
the trespass claim until the resolution of this appeal, but entered a judgment
in favor of the Spoors, declaring that SouthTex could not use the pipeline and
could not have acquired an interest in operating the pipeline from WesTTex.

Concluding
that WesTTex validly assigned its right to use the pipeline to SouthTex via the
lease agreement, and concluding that evidence the Spoors attached to their
summary judgment motion to show that SouthTex is not currently a common carrier
was conclusory and inadmissible hearsay, we reverse the judgment of the trial
court and render judgment in favor of SouthTex.

A.      Statement of Facts and
Procedural History

WesTTex
acquired an easement by condemnation for a 12-inch common carrier pipeline (the
APipeline@) through property owned by the
Spoors.  In its AStatement of WesTTex 66 Pipeline Co.@ (the AStatement@), explaining its need to build a
pipeline over the Spoors=s property, WesTTex noted that the easement was a public
necessity and that the pipeline and any replacement pipeline would be used as a
common carrier pipeline transporting crude oil and refined petroleum products. 
The court held that WesTTex could immediately use and occupy the easement for Aconstructing, maintaining, and
operating@ the Pipeline.  The court further ordered that a Writ of Possession
should issue in favor of WesTTex and against the Spoors to enable WesTTex to
exercise the rights just mentioned as well as the rights described in WesTTex=s Statement on file with the court. 
The Statement declared, among other things, the following:

$                  
AWesTTex is a common carrier in the pipeline business
in . . . Texas for the transportation of oil products by pipeline to or for the
public for hire.@

$                  
AWesTTex has declared by resolution that public
convenience and necessity require, and . . . it is . . . in the public interest
for WesTTex to take and acquire by condemnation, an unobstructed permanent
easement and right of way. . . through and across [the Spoors=s property].@








$                  
AAcquisition of the Easement . . . is
a public necessity. . . . The pipeline and any replacement pipeline will be
utilized by WesTTEx, and its successors and assigns, as a common carrier
pipeline transporting crude oil and refined petroleum products . . . .@

Thus, WesTTex=s Statement contemplated the potential
assignment of the easement and pipeline to other common carriers.  Through a
Pipeline Lease Agreement (the ALease Agreement@) dated June 15, 2000, WesTTex
assigned several rights to SouthTex for a renewable five-year term, including
(a) the right to operate the Pipeline as a common carrier pipeline, and (b) the
property rights WesTTex had acquired and would acquire through the condemnation
order.  

When the Spoors learned of the Lease
Agreement, they filed suit alleging trespass by SouthTex, arguing that rights
to a condemned easement cannot be leased, and that SouthTex is not a common
carrier pipeline company.  The trial court granted the Spoors=s no-evidence and traditional motions
for partial summary judgment, and denied SouthTex=s no-evidence and traditional motions
for summary judgment as well as SouthTex=s objections to affidavits and
several exhibits filed in support of the Spoors=s traditional motion for summary
judgment.[1] 

B.      Standard
of Review








We
review the trial court=s summary judgment de novo.  Provident Life & Accident
Ins. Co. v. Knott, 128 S.W.3d 211, 215 (Tex. 2003).  When both parties move
for summary judgment on the same issues and the trial court grants one motion
and denies the other, as here, the reviewing court considers the summary
judgment evidence presented by both sides, determines all questions presented,
and if the reviewing court determines that the trial court erred, renders the
judgment the trial court should have rendered.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  To prevail on a motion for summary
judgment, the movant must establish that there is no genuine issue as to any
material fact and he is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c).  When
reviewing a summary judgment, we take as true all evidence favorable to the nonmovant,
indulge every reasonable inference, and resolve any doubts in his favor.  Valence
Operating Co., 164 S.W. 3d at 661.

C.      Resolution of the Issues

1.       The
Adequacy of the Affidavit.

First,
we will address SouthTex=s fifth issue because it impacts our determination of the
other issues.  SouthTex claims the trial court erred in overruling its
objections to the affidavit of the Spoors= attorney, William D. Noel, and to
the attached exhibits numbered 1, 2, 3, 4, and 6.  As we explain in more detail
below, we agree that the trial court erred in overruling the objections.

a.       The Law
Relating to Affidavits.








Affidavits Ashall be made on personal knowledge, shall
set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to testify to the matters stated
therein.@  Tex. R. Civ. P. 166a(f).  To avoid
being conclusory, an affidavit must contain specific factual bases, admissible
in evidence and upon which conclusions are drawn.  Nichols v. Lightle,
153 S.W.3d 563, 570 (Tex. App.CAmarillo 2004, pet. denied).  Merely
reciting that an affidavit is made on personal knowledge is insufficient.  See
Humphreys v. Caldwell, 888 S.W.2d 469, 470 (Tex. 1994).  Instead, the
affidavit must go further and disclose the basis on which the affiant has
personal knowledge of the facts asserted.  Radio Station KSCS v. Jennings,
750 S.W.2d 760, 762 (Tex. 1988).  Statements made in the affidavit need factual
specificity such as time, place, and the exact nature of the alleged facts. Brownlee
v. Brownlee, 665 S.W.2d 111, 112 (Tex. 1984).  A person=s position or job
responsibilities can peculiarly qualify him to have personal knowledge of facts
and establish how he learned of the facts.  First Nat=l Bank in Munday
v. Lubbock Feeders, L.P., 183 S.W.3d 875, 881 (Tex. App.CEastland 2006,
pet. denied).








SouthTex objected to the affidavit by Noel in part because
it claimed that Noel is disqualified under Rule 3.08 of the Texas Disciplinary
Rules of Professional Conduct, and claimed that he lacked personal knowledge of
the facts and statements to which he testified.  SouthTex also objected to the
affidavit for including statements which are conclusory, or that call for a
legal conclusion or opinion.[2] 
Subject to certain specified exceptions, Rule 3.08 of the Texas Disciplinary
Rules of Professional Conduct prohibits an attorney from appearing as both
witness and counsel. Tex. Disciplinary
R. Prof=l Conduct 3.08.  If the Alawyer=s testimony
concerns a controversial or contested matter, combining the roles of advocate
and witness can unfairly prejudice the opposing party.@ Id. at
cmt. 4.  The appearance of a testifying advocate tends to cast doubt on the
ethics and propriety of the judicial system.  Aghili v. Banks, 63 S.W.3d
812, 818 (Tex. App.CHouston [14th Dist.] 2001, pet. denied)
(op. on reh=g).  When, as here, an attorney who represents a party
is an affiant in support of a motion for summary judgment, he is a witness. See
Mauze v. Curry, 861 S.W.2d 869, 870 (Tex. 1993).  Moreover, Noel=s testimony did
not fall within any of the five exceptions enumerated in Rule 3.08(a).[3] 
SouthTex=s status with the
Railroad Commission was a contested matter that formed a basis for the Spoors=s suit for
trespass.  The Spoors had the burden of proving trespass as a matter of law. 
They used Noel=s affidavit to interpret the Railroad Commission=s paperwork.  As
counsel for the Spoors, Noel is an inappropriate person to present any facts as
to this question.  But, even if the trial court determined one of the Rule 3.08
exceptions applied to Noel, the affidavit still would fail if it contained
hearsay and conclusory remarks and failed to prove Noel=s personal
knowledge. 

b.       The
Affidavit Contained Inadmissible Hearsay, Was Conclusory, and Failed to Prove
Noel=s Personal Knowledge of Facts Stated
Therein.








First, the affidavit failed to prove Noel=s personal
knowledge of the facts contained in the affidavit.  When confronted with an
objection due to lack of personal knowledge, Noel responded with a revised
affidavit, explaining how he actually traveled to Austin.  He also made a few
small word changes in his statements, in an attempt to make the statements less
of a legal conclusion.  Noel misses the point of personal knowledge.  The fact
that Noel traveled to Austin personally to pick up two certified copies of
printouts from the Railroad Commission is irrelevant.  Exhibit 5, which appears
to be a AMaster Inquiry@ printout, is not
self-explanatory, and needs interpretation by an official of the Railroad
Commission with a job that would Apeculiarly qualify@ that person to
have personal knowledge of the facts contained in the document.  However, Noel=s opinion of what
this printout means as to the question of SouthTex=s status as a
common carrier fails to prove he has personal knowledge of the information in
the printout and is conclusory and therefore amounts to no evidence. See Geiselman
v. Cramer Fin. Group, Inc., 965 S.W.2d 532, 537 (Tex. App.BBHouston [14th
Dist.] 1997, no writ) (concluding that an affidavit not based upon the personal
knowledge of the affiant amounts to no evidence of the matters stated therein);
Smedvig Asia, Ltd. v. Diaz, No. 01-99-01107-CV, 2000 WL 351792, at *5
(Tex. App.BBHouston [1st Dist.] Apr. 6, 2000, no pet.) (not
designated for publication) (concluding that an affidavit that contains
conclusory statements and fails to show the basis on which the affiant had
personal knowledge of the facts stated therein is no evidence of those facts). 
Nothing in the affidavit shows that Noel is qualified to explain the contents
of the document.  See Tex.
R. Evid. 602.  What AP-5 Status: Inactive@ means to the
Railroad Commission must be explained by a Railroad Commission official or
someone who has proven that he knows what it means.[4] 
Noel=s reference to
unnamed employees, such as file clerks, who Aassisted@ Noel in reviewing
the document does not correct the fatal flaws in his affidavit and is
inadmissible as hearsay.  See Tex.
R. Evid. 801(d).

In paragraphs seven and eight of his original and revised
affidavits, Noel states legal conclusions and opinions as to the current status
of SouthTex with the Railroad Commission.  Again, without any underlying
information to show that Noel is qualified to address this issue, Noel=s statements
amount to no evidence.  See Estate of Gajewsky v. John Hancock Life Ins. Co.,
No.14-04-00748-CV, 2005 WL 1017628, at *3 (Tex. App.BBHouston [14th
Dist.] May 3, 2005, no pet.) (mem. op.) (holding that an affidavit comprised
entirely of legally and factually conclusory statements that contains no
attempt to show a basis for those conclusions in the personal knowledge of the
affiant amounts to no evidence capable of defeating summary judgment).  In
addition, a legal conclusion in an affidavit is insufficient to raise an issue
of fact in response to a motion for summary judgment or to establish the
existence of a fact in support of a motion for summary judgment. Mercer v.
Daoran Corp., 676 S.W.2d 580, 583B84 (Tex. 1984).








Concerning exhibits 1, 2, 3, and 4, we do not address the
hearsay objection because these exhibits are not relevant to the resolution of
the issues before us, even if they fall under a hearsay exception. See Tex. R. Evid. 401.[5] 
Exhibit 6 contains an affidavit from one of the attorneys in Orange County,
Inc. v. Citgo Pipeline, Co., 934 S.W.2d 472 (Tex. App.CBeaumont 1996, writ denied).  Exhibit 6 contains
the same information that is found in the Orange County opinion and has
no bearing on the issues before us and, therefore, is not relevant.  Tex. R. Evid. 401.

In short, based on the reasons stated above, we conclude
that paragraphs seven and eight of Noel=s affidavit are
insufficient to satisfy Tex. R. Civ. P. 166a(f)
for use as evidence, and exhibits 1, 2, 3, 4, and 6, are irrelevant.  Thus, we
sustain SouthTex=s fifth issue, and we will not consider
paragraphs seven and eight of the affidavit or the exhibits in determining the
issues.          

2.       WesTTex
Could and Did Assign the Condemned Easement to SouthTex.

SouthTex
argues that its use of the easement and pipeline is authorized by the lease
agreement and is consistent with the rights being acquired by WestTex through
condemnation.  The Spoors contend WesTTex is not authorized to partially
transfer its rights by lease and, therefore, SouthTex is trespassing.  The
Spoors also argue that SouthTex cannot lease the pipeline because SouthTex is
not a common carrier pipeline company.

a.       Pipeline
Easements are Assignable.








Pipeline
easements are assignable in Texas.  Valero Eastex Pipeline Co. v.
Jarvis, 990 S.W.2d 852, 855 (Tex. App.CTyler 1999, pet. denied) (citing Orange
County, Inc., 934 S.W.2d at 475).  With respect to partial assignments of
such an easement, the more modern view in commercial easements is that such an
easement is partially alienable when it does not burden the underlying land
beyond what was contemplated in the original easement grant.  Orange County,
Inc., 934 S.W.2d at 475 (citing Alan David Hegi, The Easement in Gross
Revisited: Transferability and Divisibility Since 1945, 39 Vand.L.Rev. 109, 130B31 (1986); Restatement of Property ' 493 (1944)).  Texas follows this
modern view. Id.  Although easements Ain gross@ are personal to the grantee only,
and are generally not assignable or transferable, the parties may create an
assignable easement in gross through an express assignment provision.  Farmer=s Marine Copper Works, Inc. v. City
of Galveston, 757
S.W.2d 148, 151 (Tex. App.CHouston [1st Dist.] 1988, no writ); Engelbretson v. Hyder,
No. 10‑02‑00320‑CV, 2005 WL 168838, at *1 (Tex. App.CWaco Jan. 26,
2005, pet. denied) (mem. op.).  Thus, without something specific in the record to show that this
easement could not be assigned, Texas law would allow it.  We have not found
any evidence or fact in the record to make the easement unassignable.  In fact,
we have found just the opposite.

Not only
are commercial easements generally assignable, this specific easement was
assignable.  The order of the court granting a Writ of Possession to WesTTex
incorporated by reference the Statement submitted by WesTTex in the
condemnation proceeding.  The Statement provided that the easement and Pipeline
would be Autilized by WesTTex, and its successors and assigns, as a common carrier
pipeline . . . .@  Thus, the order by the court granting the easement
incorporated language making the easement assignable by WesTTex, as long as the
Pipeline is utilized as a common carrier pipeline.  See Strauch v. Coastal
States Crude Gathering Co., 424 S.W.2d 677, 683 (Tex. Civ. App.CCorpus Christi 1968, writ dism=d) (holding rights were made
specifically assignable by language in grant providing terms shall be binding
on Asuccessors and assigns@).  Both sides agree the Pipeline is
being used as a common carrier pipeline in accordance with the condemnation
order.

b.       SouthTex=s Use Did Not
Impose a Greater or Different Burden on the Lease.

The
Spoors do not argue that the lease subjects the property to a greater burden
than granted by the Writ of Possession and condemnation proceedings.  They
argue that (1) only they can authorize SouthTex to use the land, (2) there is
no evidence that WesTTex has the legal right or power to lease the Pipeline to
SouthTex, and (3) there is no evidence that SouthTex has the ability to acquire
the right to use and occupy the Pipeline and property from WesTTex.  We will
address the last two questions; by answering them, the first will also be
answered.  First, the Spoors claim that Calcasieu Lumber Co. v. Harris,
77 Tex. 18, 13 S.W. 453 (1890), controls and, according to Calcasieu,
rights in a condemned easement cannot be leased to others.  However, they
misinterpret Calcasieu.








Calcasieu concerned two statutes. 13 S.W. at
454.  First, a statute allowed railroads to condemn easements and right-of-ways
on which to build their tracks.  Id.  Second, a different statute
allowed railroads to own land in fee simple on which their tracks were built.  Id. 
In the second instance, the Court found the railroad would have all the rights
in ownership to use the land in any manner not hurtful to others, which
included leasing the land to derive a profit from it.  Id.  The Court
stated, ANo such rights, however, exist as to
a right of way acquired by condemnation, or by a conveyance made by the owner
which only conveys an easement.@  Id.  The Spoors= reliance on this isolated sentence
is misplaced.  The right the Court referred to was not the right to lease per
se, but the right to lease in order to make a profit independent from the use
anticipated by the condemnation.  The Court went on to explain in the following
manner:

Where property is taken for a public use the owner is
not divested of any right further than is necessary for the public purpose;
hence the statute to which we have referred announces the rule of law that the
title acquired through compulsory takings for public use >shall not be so construed as to
include the fee-simple estate in lands.=. . . This being the reason for the
exercise of such a power, it requires no argument to prove that after the right
has been exercised the use of the property must be held in accordance with
and for the purposes which justified its taking; otherwise, it would be a
fraud on the owner, and an abuse of power. . . . They were not empowered to use
the exclusive right of way granted to each for any other independent
purpose than that for which it was granted.  The fee remained in the private
owner, and, outside of the authorized use, which must be public,
or incidental to the public use, the proprietary right is in the original
owner.

Id. at 454B55 (citation omitted) (emphasis
added).  The Court=s prohibition concerned any lease that would be made on a
condemned easement for an independent use not contemplated by the
condemnation.  The examples given included the building of stores, taverns,
or other businesses that fell outside the authorized public use or a use
incidental to railroad business.  Id. at 454.








This
appeal does not involve a use falling outside the use authorized by the
condemnation proceedings.  The use of the Pipeline is the same as the purpose
that justified the taking and the same as the authorized use contemplated by
the condemnation: the transportation of crude oil and refined petroleum
products by a common carrier.  Thus, because the lease does not divest the
property owner of any additional rights or expand the burden on the property,
SouthTex=s acquisition of the use of the
Pipeline from WesTTex is acceptable under Calcasieu.

c.       The Lease
Was a Valid Assignment.

The
Spoors next contend that rights acquired through condemnation cannot be Aassigned@ through a lease, only through an Aassignment,@ and cite Southwestern Bell
Telephone Co. v. Texas & New Orleans Railway Co., 125 F.2d 699 (5th
Cir. 1942), in support of their argument.  In essence, their claim is that a
lease is not an assignment.  Our research does not support their position.

ALease@ is defined as A[a] contract by which a rightful possessor
of real property conveys the right to use and occupy the property in exchange
for consideration, usu. rent.@  Black=s Law Dictionary 907 (8th ed. 2004) (emphasis added).  AConvey@ is defined as A[t]o transfer or deliver (something,
such as a right or property) to another, esp. by deed or other writing.@  Id. at 357 (emphasis added). 
The definition of transfer addresses our issue exactly.  ATransfer@ is defined as:

Any mode of disposing of or parting with an asset or an
interest in an asset, including a gift, the payment of money, release, lease,
or creation of a lien or other encumbrance.  The term embraces every method B direct or indirect, absolute or
conditional, voluntary or involuntary B of disposing of or parting with
property or an interest in property . . . .

Id. at 1535 (emphasis added).  And
lastly, Aassignment@ is defined as A[t]he transfer of rights or property.@ Id. at 128.  Here, WesTTex
transferred its rights by lease, conveying those rights to its assigns.  The
fact that the rights concerned a condemned pipeline easement, and were
transferred by a lease, does not make the conveyance ineffective.








In
addition, in Hubenak v. San Jacinto Gas Transmission Co., the Texas
Supreme Court anticipated a transfer or conveyance of condemned easements,
other than an all-out sale, to other carriers operating pipelines as long as
the pipeline is operated in a manner the condemnation contemplated. 141 S.W.3d
172, 191 (Tex. 2004).  Writing for the majority, Justice Owen stated, AWith regard to assignments of
easements, an easement for a pipeline obtained by a common carrier in an
eminent domain proceeding could, at a minimum, be transferred, sold,
or conveyed to another common carrier to operate a pipeline as a common
carrier without an explicit request for such a right in the condemnation
petition.@ Id. (emphasis added).  Thus, the Court anticipated other
transfers such as the one WesTTex executed with SouthTex.

As with Calcasieu,
the Spoors have misconstrued another case on which they have placed heavy
reliance.  In Southwestern Bell Telephone Co., the condemnation
judgments explicitly allowed only ASouthwestern Telephone and Telegraph
Co. and its successor, Southwestern Bell Telephone Co.@ to occupy the easement for their
business. 125 F.2d at 700.  The judgments did not allow a third company to add
an additional burden to the easement through a lease.  Id.  As we have
already stated, the present case does not involve the imposition of an
additional burden on the condemned estate.  Nor does it involve a condemnation
order that authorized only one specifically listed company to use the easement.

3.         The Spoors Failed
to Rebut SouthTex=s Proof That it is a Common
Carrier.

Finally,
the Spoors argue that SouthTex is not a common carrier.  They rely on the
affidavit of their attorney, Noel, to support this claim.  As we have already
held, Noel=s affidavit constitutes no evidence, and much of the affidavit, as well
as all of the printout from the Railroad Commission, contains inadmissable
hearsay.  Therefore, the Spoors have not rebutted the evidence SouthTex
attached to its motion for summary judgment showing that it is a common
carrier, that its partners are common carriers, and that the Pipeline is being
operated for the same reasons stated in the condemnation proceedings.








Conclusion

For the foregoing reasons, we reverse the trial court=s judgment, which granted the Spoors= motions for summary judgment, and render judgment
that the Spoors take nothing on their claim for declaratory relief.  We reverse
the trial court=s denial of SouthTex=s motions for summary judgment, and we remand the case to the trial
court for proceedings consistent with this opinion, including entering a
declaration that WesTTex was authorized to grant and convey to SouthTex the
property rights it acquired through condemnation and that, through the Lease
Agreement, SouthTex acquired those rights and has a legal right to occupy and
use the easement for the operation of a common carrier pipeline in accordance
with the order granting the Writ of Possession.

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion/Opinion filed October 23, 2007.

Panel consists of
Justices Yates, Anderson, and Fowler.









[1]  The Spoors also attached this evidence to their
no-evidence summary judgment motion, but we have not considered the evidence in
conjunction with that motion, as Rule 166a(i) contemplates that no evidence
will be attached to this type of motion. See Tex. R. Civ. P. 166a(i) (AAfter
an adequate time for discovery, a party without presenting summary judgment
evidence may move for summary judgment on the ground that there is no
evidence of one or more essential elements of a claim or defense . . . .@) (emphasis added); see also City of Keller
v. Wilson, 168 S.W.3d 802, 825 (Tex. 2005) (noting that Rule 166a(i) does
not allow the filing of a no-evidence motion for summary judgment with
supporting evidence); Binur v. Jacobo, 135 S.W.3d 646, 650B51 (Tex. 2004) (stating the general rule that Aif a motion brought solely under [Rule 166a](i)
attaches evidence, that evidence should not be considered unless it creates a
fact question@).





[2]  Specifically, SouthTex objected to paragraphs 7 and
8 in the original affidavit, and paragraphs 7 and 8 in the revised affidavit. 
Those paragraphs stated the following:

 

[original] 7.  Attached to this affidavit marked as
Exhibit 5 is an original certified copy of a document I obtained from the
Railroad Commission of Texas documenting that SouthTex 66 Pipeline Company,
Ltd. has not filed a P-5 form of financial responsibility since September 21,
2001, and that as a result SouthTex 66 Pipeline Company, Ltd. is inactive as
far as the Railroad Commission of Texas is concerned.

 

[original] 8.  While I was at the Railroad Commission
of Texas, I reviewed the records of the Railroad Commission of Texas with the
assistance of personnel of the Railroad Commission of Texas and determined that
by October 31, 2003, SouthTex 66 Pipeline Company, Ltd. had transferred all of
its permits to operate a pipeline in Texas to other entities.

 

[revised] 7.  On August 4, 2005, I personally traveled
to Austin, Texas to personally review the records at the Railroad Commission of
Texas.  Attached to this Affidavit marked as Exhibit 8 is a copy of the receipt
for the aviation fuel purchased at the Signature Flight fixed base operator for
the Cessna 310 Q airplane with tail Number 713MF that I was a passenger in on
the trip from Houston to Austin and back that day.  Attached to this Affidavit
marked as Exhibit 9 is a true and correct copy of the portion of my Visa bill
for the month of August 2005 reflecting the charge for the aviation fuel
purchased at the Signature Flight fixed based operator for the Cessna 310 Q
airplane with tail Number 713MF that I was a passenger in on the trip from
Houston to Austin and back that day.  Attached to this Affidavit marked as
Exhibit 5 is a true and correct copy of an original certified copy of a
document I obtained from the Railroad Commission of Texas on August 4, 2005,
which reflects that SouthTex 66 Pipeline Company, Ltd. has not filed a P-5 form
of financial responsibility with the Railroad Commission of Texas since
September 21, 2001.  Attached to this Affidavit marked as Exhibit 10 is the
original receipt from the Railroad Commission of Texas for my personal payment
of $1.10 cash for the certified copy of the Railroad Commission of Texas that I
obtained on August 4, 2005,a true and correct copy of which is attached as
Exhibit 5 

hereto.

 

[revised]
8.  While I was at the Railroad Commission of Texas, I reviewed the records of
the Railroad Commission of Texas with the assistance of personnel of the
Railroad Commission of Texas and observed that according to the Railroad
Commission of Texas, SouthTex 66 Pipeline Company, Ltd. has not had a permit to
operate a pipeline in Texas since November 1, 2003.





[3]  Rule 3.08(a) provides:

 

(a) A lawyer shall not accept or continue employment
as an advocate before a tribunal in a contemplated or pending adjudicatory
proceeding if the lawyer knows or believes that the lawyer is or may be a
witness necessary to establish an essential fact on behalf of the lawyer=s client, unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony will relate solely to a matter of
formality and there is no reason to believe that substantial evidence will be offered
in opposition to the testimony;

(3) the testimony relates to the nature and value of
legal services rendered in the case;

(4) the lawyer is a party to the action and is
appearing pro se;

(5) the lawyer has promptly notified opposing counsel
that the lawyer expects to testify in the matter and disqualification of the
lawyer would work substantial hardship on the client.

 

Tex.
Disciplinary R. Prof=l Conduct 3.08(a).





[4]  In addition, at least one other question remains unanswered
regarding the document; it pertains to the last line on the printout: A****Remarks exist for this organization.  Hit PF1 to
go to >Remarks Inquiry.=@ 
No subsequent comment or additional printout exists in the record to show this
information; therefore, the printout appears to be an incomplete record with
perhaps vital information missing.





[5]  The exhibits attached to Noel=s affidavit, which was attached to Plaintiff=s Response to SouthTex=s Motions for Summary Judgment, are as follows: (Ex. 1) copy of the
Board Action by WestTex; (Ex. 2) copy of the WestTex=s Board of Directors resolution; (Ex. 3) copy of
in-house approval to build pipeline; (Ex. 4) paper concerning McBeth pipeline;
(Ex. 5) master inquiry from the Railroad Commission.