Barbara Ruth **RUNYAN**, Lynda Rae Runyan, Stephen A. Runyan, and Charles E. Runyan, Appellants,

v.

Lorna C. **MULLINS**, Claire Louise Mullins, Stephanie Leigh Mullins, Richard Rolen Mullins and Ameritrust Texas N.A., Trustee of the Edgar L. Runyan Survivors Trust, Appellees.

No. 2–92–200–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 29, 1993.

Rehearing Overruled Dec. 7, 1993.

H.C. McCracken, McCracken Taylor & Nelson, P.C., Carrollton, for appellants.

Nathan K. Griffin, Thomas, Neilon & Griffin, P.C., Dallas, for appellees.

Before WEAVER, HICKS and FARRAR, JJ.

## OPINION

WEAVER, Justice.

This summary judgment appeal involves the issue of whether a survivor's trust instrument was effectively amended by the surviving grantor. The more specific question is whether a letter signed by the surviving grantor, taken together with other related correspondence and documents, which were not signed by the grantor, was sufficient to amend the trust.

Appellants argued that the proposed trust amendment was not effective and their motion seeking summary judgment to that effect was denied. At the same time, appellees sought and obtained a summary judgment holding that the trust instrument was effectively amended.

By this appeal, appellants attack the denial of their motion for summary judgment and the granting of the summary judgment for appellees. We reverse and render judgment for appellants.

The survivor's trust, which is the subject of this appeal, evolved from a trust agreement executed on July 3, 1978, by Edgar Runyan, and his wife, Cecil N. Runyan. That agreement provided that on the death of the first grantor to die, the original trust was to be divided into equal separate parts, one being referred to as the "Decedent's Trust" and the other being referred to as the "Survivor's Trust." The decedent's trust was to be irrevocable. However, the survivor's trust could be amended and/or revoked, in whole or in part, during the survivor's life, "by instrument in writing signed by the surviving Grantor and delivered to Trustee." The death of Mrs. Runyan in 1983 resulted in the division of the original trust into two trusts, one being the decedent's trust, which is not involved in this appeal, and the other being the survivor's trust, the subject of this appeal.

On April 22, 1985, Edgar Runyan amended the survivor's trust to provide that upon his death the trust property would be distributed one-half to Lorna Mullins, who is one of the appellees, and one-half to appellants. There is no dispute concerning the terms or validity of the April 22, 1985, amendment of the survivor's trust.

In July of 1991, the trustee sent a letter to Marvin Brown, the attorney for the trust, regarding a request to amend the survivor's trust. This letter was dated July 17, 1991, and a proposed trust amendment was included within the body of the letter. The proposed trust amendment called for elimination of the disposition of trust property to appellants and for all trust property to go to appellees in varying shares.

On August 9, 1991, the trustee sent a letter to Edgar Runyan regarding the proposed trust amendment. The terms of the proposed trust amendment were not included in the August 9 letter, but this letter referred to enclosing a copy of the July 17, 1991, letter which was sent to Marvin Brown. The August 9 letter also instructed Edgar Run-

yan that if he wanted to proceed with the proposed amendment, to sign and date a copy of the August 9 letter and a copy of the July 17 letter. However, neither a copy of the August 9 letter or the July 17 letter was enclosed with the original of the August 9 letter.

The trustee was apparently informed of this error and on August 13, 1991, the trustee sent Edgar Runyan a letter stating: "I have enclosed the copy of the letter which was mailed to you on August 9, 1991, indicating a place for your approval of the letter." The August 13 letter included a copy of the August 9 letter, but did not include a copy of the July 17 letter. Edgar Runyan signed and dated the copy of the August 9 letter. However, Edgar Runyan never did sign and date a copy of the July 17 letter, the only document which included the proposed trust amendment.

On September 9, 1991, the trustee mailed a formally prepared Amendment of Trust Agreement to Edgar Runyan for his review. The trustee also requested to visit with Edgar Runyan at a later date for the purpose of signing and dating the Amendment of Trust Agreement in the presence of a notary. However, on September 18, 1991, Edgar Runyan had a stroke and was taken to the hospital. He was unable to execute the Amended Trust Agreement before his death on October 1, 1991. On January 13, 1992, the trustee filed an Original Petition for Interpleader seeking a declaration of the interests of the appellees and the appellants in the survivor's trust.

Before addressing the issue of whether the survivor's trust was amended, we will first address appellees' concern with appellants' point of error. Appellees point out that when both parties file summary judgment motions, and one is granted and one is denied, the appellate court may consider the denial if the appealing party complains of both the granting of the opponent's motion and the denial of its own motion. *Phillips Natural Gas Co. v. Cardiff*, 823 S.W.2d 314, 317 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Appellees further allege that appellants' sole point of error only complains of

the denial of appellants' motion for summary judgment and not the granting of appellees' motion. It may be true that the literal wording of appellants' point of error does not attack the trial court's granting of appellees' motion for summary judgment. However, because appellate courts will liberally construe points of error, the literal wording of the point of error is not all that we consider. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 632–33 (Tex.1986); *O'Neil v. Mack Trucks, Inc.,* 542 S.W.2d 112, 114 (Tex.1976).

■ Assignments of error are designed to accomplish several purposes, one of which is "to point the court to the particular rulings or ground of error on which the party intends to rely for reversing the judgment." *Miller v. Fenner, Beane & Ungerleider,* 89 S.W.2d 506, 509 (Tex.Civ.App.—Eastland 1936, writ dism'd). It is also the purpose of an assignment of error "to apprise the adverse party of the rulings, actions, or other parts of the proceedings as to which it is his purpose to contend that there was error." *Id.* Therefore, "[i]f a 'point' is sufficient to direct the Court's attention to the matter complained of, the Court will look to the 'point' and the statement and argument thereunder to determine the question of reversible error." *O'Neil,* 542 S.W.2d at 114 (quoting *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478, 482 (1943)).

■ We hold that appellants' point of error is sufficient to advise this court that appellants are contesting both the denial of their motion and the granting of appellees' motion. It is also sufficient to apprise appellees of exactly what rulings appellants are contesting on appeal. Both parties have briefed and argued the denial of appellants' motion, as well as the granting of appellees' motion. Appellees cannot claim they were unaware appellants were challenging the granting of the motion in appellees' favor. In fact, appellees' own brief points out that this is an appeal from the *granting* of a Summary Judgment in their favor. Thus, appellees' contention that appellants have not complained of both the granting of appellees' motion and the denial of appellants' motion is without merit, and we will consider both.

■ We will now consider the appellants' challenge of the granting of appellees' motion for summary judgment. In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Id.* Therefore, we must view the evidence in the light most favorable to the nonmovant. *Id.*

■ In the present case, we agree with both appellants and appellees that there is no genuine issue of material fact. The undisputed summary judgment evidence indicates that Edgar Runyan did sign, date and deliver a copy of the August 9 letter to the trustee. However, the August 9 letter did not contain the proposed trust amendment. It merely made reference to the July 17 letter and gave some indication of Edgar Runyan's possible intent to amend the trust. The evidence is also undisputed that Edgar Runyan never did sign and deliver to the trustee a copy of the July 17 letter, which is the only letter that included the proposed trust amendment. Thus, the issue is whether Edgar Runyan's signing, dating, and delivering a copy of the August 9 letter to the trustee constituted a valid amendment to the trust entitling appellees to judgment as a matter of law.

■ According to the Restatement, "[i]f the settlor reserves a power to modify the trust only in a particular manner or under particular circumstances, he can modify the trust only in that manner or under those circumstances." RESTATEMENT (SECOND) OF TRUSTS § 331 cmt. d (1959). Although we find no Texas cases which deal squarely with this issue, this principle is well recognized in the area of trust law. *See, e.g., Northwestern University v. McLoraine,* 108 Ill.App.3d 310, 64 Ill.Dec. 50, 54, 438 N.E.2d 1369, 1373 (1982); *In re Trust of Kaufmann,* 460 Pa. 24, 331 A.2d 209, 211 (1975). *See generally* 89 C.J.S. *Trusts* § 87 (1955); GEORGE GLEASON BOGERT, TRUSTS & TRUSTEES § 993 (2d ed. 1983).

This principle is also consistent with Texas trust law. The Texas Trust Code provides that "[i]f the provisions of this subtitle and the terms of a trust conflict, the terms of the trust control...." TEX.PROP. CODE ANN. § 111.002(a) (Vernon 1984). Thus, when the terms of a trust set out a specific method or manner in which to amend the trust, the Texas Trust Code indicates that those terms are controlling and must be followed. *See id.*

Furthermore, appellees do not contest this principle of law. They contend that the survivor's trust was amended or revoked by an instrument in writing signed by Edgar Runyan and delivered to the trustee, in accordance with the terms and conditions of the trust. Appellants, on the other hand, argue that there was no amendment of the trust by an instrument in writing signed by Edgar Runyan and delivered to the trustee.

Appellees contend that the August 9 letter represents a clear manifestation of Edgar Runyan's intent to amend the survivor's trust. Appellees further argue that because the August 9 letter did manifest such an intent, a valid trust amendment was executed when Edgar Runyan signed and delivered the copy of the August 9 letter to the trustee. In support of their position, appellees rely on *State Bank of Parsons v. First Nat. Bank in Wichita*, 210 Kan. 647, 504 P.2d 156 (1972). In that case, the trust agreement stated:

> This trust shall be revocable in whole or in part by the Settlor at any time during his lifetime without permission of or notice to any person except by written notice to the Trustee....

*Id.* at 159. The issue was whether a letter written by the settlor and delivered to the trustee was sufficient to revoke the trust. *Id.* at 158–59. The letter in question stated that the settlor wanted the trust to be terminated. *Id.* at 158. Because the plain language of the trust allowed for revocation by written notice to the trustee, the court held that the letter was sufficient to revoke the trust without any further action on behalf of the settlor. *Id.* at 160.

In *Sanderson v. Aubrey*, 472 S.W.2d 286 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.), another case relied on by appellees, the issue was whether an inter vivos trust had been revoked by language contained in the settlor's will. In *Sanderson*, the settlor had conveyed a real estate interest to a trustee to hold in trust for her grandson until he reached the age of twenty-one. *Id.* at 287. The settlor later executed a will which stated that the trust was revoked. *Id.* The trust instrument did not require that notice of revocation be given to the trustee or to the beneficiary. *See id.* The court found that the language used in the settlor's will evidenced a "definitive manifestation" of her intent to revoke the trust. As a result, the court held that the trust was revoked as of the date the will was executed. *Id.* at 288.

Appellees also rely on *Jameson v. Bain*, 693 S.W.2d 676 (Tex.App.—San Antonio 1985, no writ), in support of their position. *Jameson* involved a question of whether a settlor's will had revoked the trust in question. The court held that the will did not revoke the trust because, in contrast to *Sanderson*, the will did not contain a definitive manifestation to revoke the trust. *Id.*, at 681.

Appellees contend the above cited cases support their proposition that the signing and delivery of the August 9 letter was sufficient to revoke and/or amend the survivor's trust. However, each of those decisions is distinguishable from the case now before us, and accordingly, they do not support appellees' position.

Contrary to appellees' assertions, the August 9 letter does not manifest an intent to revoke the survivor's trust. The original trust agreement provides that if the survivor's trust is revoked, "then Trustee shall thereupon deliver all remaining trust property as to which such trust is revoked to the surviving Grantor free and discharged of trust." A careful reading of the August 9 letter gives no indication that Edgar Runyan intended for this to occur. The August 9 letter simply manifests a possible intent on Edgar Runyan's part to amend the trust. However, despite this manifested intent, there are two reasons the cases relied upon by appellees do not support the proposition

**790**

that the August 9 letter was sufficient to amend the survivor's trust.

First, as discussed earlier, if a settlor of a trust agreement reserves the power to modify the trust only in a specific manner, the trust can only be modified in that manner. This principle is well recognized in the area of trust law, and it is not challenged by appellees. The second reason the above discussed cases do not support appellees' position is that there is a significant difference between revocation of a trust agreement and amendment of a trust agreement. If the August 9 letter had clearly indicated Edgar Runyan wanted to revoke the trust, appellees' reliance on the above cases would be well placed, and there would be no question concerning what to do with the trust property since the original trust agreement gave explicit instructions.

The August 9 letter did not express an intent to revoke the trust. At best, it expressed a possible intent to amend the trust, but did not contain or reflect the terms of any such intended amendment or provide the trustee with instructions regarding the same. Accordingly, we hold as a matter of law that the signing and delivery of the copy of the August 9 letter by Edgar Runyan did not constitute a valid amendment of the survivor's trust. The trial court erred in granting the appellees' motion for summary judgment, and appellants' point of error, insofar as it attacks that judgment, is sustained.

We now address the trial court's failure to grant appellants' motion for summary judgment. "When a trial court grants a summary judgment, the losing party appeals, and an appellate court finds reversible error in the judgment, the appellate court's normal action is to reverse the trial court's judgment and remand the cause to the trial court." *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988). However, an exception may occur when both parties moved for summary judgment and one motion was granted while the other motion was denied. *Id.* "Then the appellate court should determine all questions presented, and may reverse the trial court judgment and render such judgment as the trial court should have rendered, including rendering judgment for the other mov-

ant." *Id.* However, it should be noted that before an appellate court can reverse summary judgment for one set of parties and render judgment for the others, all parties must have sought final judgment relief by their cross-motions for summary judgment. *See Bowman v. Lumberton I.S.D.*, 801 S.W.2d 883, 889 (Tex.1990). In the present case, both the appellees and the appellants sought final judgment relief in their respective motions for summary judgment.

We have already held that the survivor's trust was not further amended by the actions of Edgar Runyan in signing and delivering the copy of the August 9 letter. Therefore, we sustain appellants' point of error insofar as it complains of the trial court's denial of their motion for summary judgment.

The judgment of the trial court granting appellees' motion for summary judgment is reversed. The judgment of the trial court denying appellants' motion for summary judgment is also reversed, and we hereby render judgment that appellants' motion for summary judgment be and is hereby granted, and it is ordered that the assets of the survivor's trust be distributed in accordance with the terms of the trust as it stood following the amendment on April 22, 1985.