**Opinion filed July 21, 2022**



## In The

# Eleventh Court of Appeals

_____

## No. 11-20-00181-CV

_____

### JAY SCHAUBLE A/K/A JUAN SCHAUBLE, Appellant
### V.

### MATTHEW SCHAUBLE, IN HIS CAPACITY AS TRUSTEE OF THE EDWARD R. SCHAUBLE TRUST, Appellee

**On Appeal from the Probate Court No. 2**
**Harris County, Texas**
**Trial Court Cause No. 470,780-401**

### M E M O R A N D U M   O P I N I O N

This is an appeal from a bench trial on a motion in limine to determine if Appellant, Jay Schauble a/k/a Juan Schauble, had standing to bring an action against the Edward R. Schauble Trust. The trial court determined that Appellant lacked standing because he was not a beneficiary of the Edward R. Schauble Trust. The trial court also ordered Appellant to pay $358,692 to Appellee, Matthew Schauble, in his capacity as trustee of the Edward R. Schauble Trust, for attorney's fees for the work in the trial court and $88,750 if Appellant unsuccessfully appealed the trial

court's judgment and lost on all points. Appellant challenges these determinations in four issues. We affirm.[1]

*Background Facts*

Edward R. Schauble (decedent) created the Edward R. Schauble Trust on January 12, 2000. Prior to the genesis of this litigation, decedent amended the terms of the trust once—on October 7, 2013. Under the terms of the trust, decedent was to serve as the trustee until he became incapacitated or died. Originally, decedent's children, Matthew Schauble and Claire Schauble, were the beneficiaries of the trust. Following decedent's incapacitation or death, Matthew Schauble would assume the role of successor trustee. The terms of the trust also provided that decedent possessed the authority to amend the trust in writing.

On February 20, 2018, decedent and Appellant married. Following their marriage, several e-mails were sent from decedent's personal e-mail account to his trust attorney, Joe Cioffi. These e-mails are discussed in more depth below. In these e-mails, decedent discussed conveying one of his residences to Appellant, possibly amending the trust to include Appellant as a beneficiary, and substituting Northern Trust as the successor trustee. Decedent sent Cioffi several e-mails between February and June of 2018. In response to one of decedent's June e-mails, Cioffi cautioned decedent and said that it would be best to discuss his proposed changes at their next annual meeting. Additionally, during this same time period, decedent e-mailed Eileen Bourke, of Northern Trust, several times. In these e-mails, decedent informed Bourke that he had informed Cioffi of the changes that he had discussed with Northern Trust in their meeting.

---

[1] By order of the Texas Supreme Court, this case was transferred to this court from the First Court of Appeals. As the transferee court, we "must decide the case in accordance with the precedent of the transferor court." *See* TEX. R. APP. P. 41.3.

During his marriage to Appellant, decedent also executed a durable power of attorney wherein he appointed Appellant as his attorney-in-fact. Appellant was to remain decedent's attorney-in-fact until decedent's death. As decedent's attorney-in-fact, Appellant had the authority to "act for [decedent] in all matters that affect a trust." Additionally, decedent appointed Appellant as his health care agent in a medical power of attorney. As decedent's health care agent, Appellant had the authority to make all health care decisions for decedent. Appellant's authority under both the durable power of attorney and the medical power of attorney terminated on August 19, 2018, when decedent passed away.

On March 15, 2019, Appellant sued Appellee seeking a declaratory judgment that Appellant was a beneficiary of the trust and the owner of specific assets of the trust.[2] Appellee responded to Appellant's claims with a general denial. Additionally, Appellee included a motion in limine in his response wherein Appellee asserted that Appellant lacked standing to sue because Appellant was not an interested person in the trust.

On November 26, 2019, Appellant filed his first motion to compel production of certain documents from Appellee. The basis for Appellant's first motion to compel was his contention that Appellee inadequately and untimely responded to his request for production. Specifically, Appellant asserted that Appellee never produced eight boxes that decedent's children allegedly took from decedent's residence. On January 7, 2020, the trial court held a hearing on Appellant's motion to compel. However, the trial court ultimately suggested that Appellant reset his motion to compel.

---

[2]Appellant also sued Matthew Schauble in his capacity as the independent executor of decedent's estate. However, Appellant's claims against the estate are not a subject of this appeal.

On March 2, 2020, Appellant filed a second motion to compel. On April 13, 2020, Appellee filed a traditional motion for summary judgment. A hearing on Appellee's motion in limine and motion for summary judgment was set for May 4, 2020. However, on April 29, 2020, Appellant filed a motion for continuance. Like his motion to compel, Appellant based his motion for continuance on the boxes that decedent's children allegedly removed from decedent's home.

On June 8, 2020, the trial court held a bench trial on Appellee's motion in limine. At the start of the hearing, the trial court also heard Appellant's motion to compel. The trial court denied Appellant's motion to compel. At the end of the bench trial, the trial court found that Appellant had no interest in the trust and granted Appellee's motion in limine.

Appellee filed a motion for attorney's fees and costs on July 15, 2020. On October 2, 2020, the trial court held a hearing on Appellee's motion for attorney's fees and costs. Prior to the trial court's ruling on the motion, Appellee filed a motion to supplement the record. The supplement included detailed invoices of the work Appellee's counsel performed on the case. On October 29, 2020, the trial court granted Appellee's motion and ordered Appellant to pay Appellee $358,692 as reasonable attorney's fees and costs. The trial court also ordered Appellant to pay Appellee an additional $88,750 if Appellant appealed the initial judgment and lost.

*Analysis*

*Standing*

This appeal concerns Appellant's standing to pursue a claim against the trust. Standing is a component of subject-matter jurisdiction and focuses on whether a party has a sufficient relationship with the lawsuit to have a justiciable interest in its outcome. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 848 (Tex. 2005). If a party lacks standing, the trial court lacks subject-matter jurisdiction to hear the

4

case.[3]  *Id.* at 849.  A party's standing to sue is implicit in the concept of subject-matter jurisdiction and will not be presumed—it must be proved.  *Linegar v. DLA Piper LLP (US)*, 495 S.W.3d 276, 279 (Tex. 2016).

By statute, an "interested person" may bring a claim concerning a trust.  TEX. PROP. CODE ANN. § 115.001 (West Supp. 2021), § 115.011(a) (West 2014).  An "[i]nterested person" is defined as "a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust."  *Id.* § 111.004(7).  A "beneficiary" is "a person for whose benefit property is held in trust, regardless of the nature of the interest."  *Id.* § 111.004(2).

The parties litigated Appellant's status as a beneficiary of the trust in a motion in limine proceeding.  In the probate context, a motion in limine to determine the claimant's standing is essentially a motion to dismiss for lack of standing.  *See Estate of Burns*, 619 S.W.3d 747, 751 (Tex. App.—San Antonio 2020, pet. denied).  We review a trial court's ruling that grants a motion in limine for lack of standing in the same manner as a plea to the jurisdiction.  *See Estate of Lee*, 551 S.W.3d 802, 807 (Tex. App.—Texarkana 2018, no pet.) (citing *Estate of Forister*, 421 S.W.3d 175, 178 (Tex. App.—San Antonio 2013, pet. denied)).  Ordinarily, "[i]f the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact[-]finder."  *Id.* (second alteration in original) (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004)).  Here, the parties litigated the issue of standing in a bench trial with the trial court acting as the factfinder.

---

[3]We note that a statutory probate court has jurisdiction over "an action by or against a trustee" and "an action involving an inter vivos trust."  *See* TEX. EST. CODE ANN. § 32.006 (West 2020); *Lee v. Lee*, 528 S.W.3d 201, 212–13 (Tex. App.—Houston [14th Dist.] 2017, pet. denied).

In Appellant's first issue, he contends that the trial court erred in granting Appellee's motion in limine. Specifically, Appellant contends that there was "overwhelming evidence" that decedent manifested his intent, in compliance with the terms of the trust, to make Appellant a beneficiary of the trust. Thus, Appellant challenges the factual sufficiency of the evidence supporting the trial court's determination that decedent did not make Appellant a beneficiary under the trust.[4]

When a party attacks the factual sufficiency of an adverse finding on an issue on which it has the burden of proof, it "must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). "The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *Id.* Because it acts as the factfinder in a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). Therefore, we will not substitute our judgment for that of the factfinder so long as the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions." *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When no findings of fact or conclusions of law are properly requested or filed, we imply all facts necessary to support the judgment. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). However, when a reporter's record is filed, these implied findings are not conclusive, and the appellant may challenge the legal and factual sufficiency of the evidence to support the findings. *Sixth RMA*

---

[4]Appellant does not assert that he established his status as a beneficiary as a matter of law, which would be required for a legal sufficiency challenge. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

*Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003). The trial court's decision must be affirmed if it can be upheld on any legal theory that finds support in the record. *Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011) (per curiam).

Appellant's factual sufficiency contention is directed at the ultimate issue in the case—whether decedent amended the terms of the trust to make Appellant a beneficiary. "Any attempt to amend a term of a trust that does not comply with the specific procedure set forth in the trust instrument is ineffective." *Emps.' Ret. Fund of City of Dallas v. City of Dallas*, 636 S.W.3d 692, 696 (Tex. App.—Dallas 2021, pet. filed) (citing *Jinkins v. Jinkins*, 522 S.W.3d 771, 782 (Tex. App.—Houston [1st Dist.] 2017, no pet.)). The applicable terms of decedent's trust are as follows:

> The Donor reserves the right to revoke or amend this agreement, in whole or in part, at any time and from time to time, by a memorandum in writing delivered to the Trustee (provided, that the duties, powers, and liabilities of the Trustee shall not be materially or substantially changed by any such amendment without the consent of the Trustee in writing) and to authorize and direct the Trustee to assign, transfer, pay over and deliver to Donor's order all or any part of the Trust Estate as it may then exist. Such direction to the Trustee, upon making of such assignment, transfer, payment or delivery, shall operate as a revocation of this agreement, and the trusts hereby created, as to the property so assigned, transferred, paid over and delivered by the Trustee.

Thus, the decedent was required to deliver a writing to the Trustee demonstrating his intent to change the beneficiaries of the trust.[5]

Appellant relies on several e-mails, two Charles Schwab "Designated Beneficiary Plan Agreement" forms, handwritten notes from Decedent, and an affidavit from Sheryl James as evidence that Decedent modified the terms of the trust and inserted Appellant as a beneficiary. Appellant first contends that the

---

[5]Under the terms of the trust, decedent was the original trustee. Therefore, decedent only needed to produce a writing to amend the terms of his trust.

numerous e-mails that decedent sent established decedent's intent to make Appellant a beneficiary of the trust. Appellant testified that he typed some of decedent's e-mails. Essentially, Appellant testified that decedent would tell him what to type and that Appellant would type whatever decedent said. Specifically, Appellant relies on e-mails decedent sent to his estate attorney, Joe Cioffi. Cioffi testified that he believed that the e-mails coming from decedent's Gmail account were not actually coming from decedent.

In relevant portion, decedent's e-mail conversations with Cioffi were as follows:

> [Decedent sent the following on February 15, 2018] I had a good meeting with Northern Trust and accomplished a lot of items that have been on my mind. Can you please draw up the paperwork for Power of Attorney. Please write up as the following: *Jay AKA Juan Salazar Jr. Durable Power of Attorney and also a Medical Power of Attorney Northern Trust as Executor of trust when I am gone.*[6]

> [Cioffi sent the following on February 16, 2018] . . . I can amend your Trust documents to modify the trustee language though. Do you have contact information for Jay so I can list it in the document?

> [Decedent sent the following on May 16, 2018] Hello Joe, I hope things are going well with you. I need your quick help because I am buying a new home and I need you to put together a very short one page amendment to my trust and a side document that stipulates my ownership of the home and no other parties including my spouse. The contract goes hard in five days so I need the trust and side document done and executed within five days. This shouldn't be more than one paragraph confirming that I have some ownership of the property without and claims from anyone. Can you help me out real quick to do this one paragraph admendment to my trust. The side document that needs to be signed by me and my spouse confirming my sole ownership of the property. Also, I would like for you to send me the signature page for the trust to reexecute because I can not find the original copy. *Later on after I finish this deal I want to revisit my whole trust document*

---

[6]Emphasis added.

8

*because the children are grown up and on their own now. That makes things a lot different with the language and the payout schedule.*[7] Can you please get back to me today? . . . I would like to get this going very quickly because I got this really great deal on the home but the timeframes are compressed to go hard within five days and close by the end of this month. Can you please help me today. I appreciate your help.

[Cioffi sent the following on May 16, 2018] Hi Ed, I am doing well. Hopefully things are going well for you in Houston. Unfortunately, I am out of town until Tuesday, May 22nd, so I will be unable to conduct any document modifications until I return to Chicago. However, you do not need to modify your trust due to a new home purchase. Since you are no longer married, your ex-spouse does not have any rights to newly acquired real estate. If you want to amend your payout schedule, we can make adjustments, but she would no longer be in a position to make a claim on your estate regarding property of any type. Additionally, you should avoid copying Jay on legal correspondence unless he is an attorney because you run the risk of losing lawyer-client privilege and such communications may be discoverable in a lawsuit. It is especially important if you believe she may be considering any type of legal action against you.

[Cioffi sent the following on May 30, 2018] Hi Ed, If you are buying a new property and want it to be a trust asset, you should title it as follows: Edward R. Schauble, Trustee of the Edward R. Schauble Living Trust dated 1/12/2000[.]

[Decedent sent the following on June 7, 2018] Hello Joe, The IRS has not contacted me on my tax return so I guess we are good there, thanks for your help for helping with my taxes. On another and very urgent matter, as you recall I bought a very nice new house here in Houston. I would like to amend my trust making Northern Trust, Eileen Bourke my SUCCESSOR TRUSTEE in place of my son Matthew Schauble. I also would like to leave my house, 302 Grandview Terrace in Houston to Juan (Jay) Salazar Jr. *I have also created a new pay schedule to be revised. But I will get that to you pretty soon, but we need to add Jay to the payout schedule.*[8] Since the kids are out of college and earning nice money and I don't have an obligation to help them like before.

---

[7]Emphasis added.
[8]Emphasis added.

Lastly, we got to figure out if we need to shift the whole trust to be administered in Texas for tax purposes or leave as is. Is this something we can get done quickly? What would be the cost of these amendments? I am cash short since I just bought the new house. I really appreciate your help.

[Decedent sent the following on June 17, 2018] What is the status of these changes?

[Cioffi responded on June 19, 2018] Hi Ed, As I mentioned in prior conversations, since the changes to your trust are significant, we need to discuss the modifications during our next annual meeting. Making such drastic changes will have serious impacts on your overall estate plan, which seem to run counter to all of our prior planning. Additionally, you still have an outstanding invoice with my firm. Please forward payment as soon as possible so our accounting department does not send the past due amount to collections.

Each of the above e-mails were sent from and to decedent's personal e-mail account.

Decedent's e-mails to Cioffi fail to demonstrate his present intent to make Appellant a beneficiary under the trust. Decedent's February 15 e-mail fails to state that decedent wanted to amend his trust to include Appellant as a beneficiary. Rather, the e-mail only states that decedent wished Appellant to have a durable and medical power of attorney over decedent. The e-mail also seems to suggest that decedent wanted Northern Trust to serve as his successor trustee. However, the e-mail makes no reference to decedent's possible desire to make Appellant a beneficiary of the trust. *See Matter of Estate of Kuyamjian*, No. 03-18-00257-CV, 2018 WL 3749834, at *5 (Tex. App.—Austin Aug. 8, 2018, pet. denied) (mem. op.) (holding that a will that purported to bequeath real property that was held in trust did not revoke or amend the trust because language used in the will did not mention the trust or any trust modification).

Decedent's May e-mail also fails to demonstrate decedent's present intent to make Appellant a beneficiary under the trust. The e-mail mentions decedent's desire to revisit the terms of his trust but fails to use any language illustrating

10

decedent's present intent to immediately amend his trust to include Appellant as a beneficiary. Additionally, it fails to indicate how decedent would like to amend the payout schedule, further indicating a lack of present intent to amend the trust. *See Gordon v. Gordon*, No. 11-14-00086-CV, 2016 WL 1274076, at \*1 (Tex. App.—Eastland Mar. 31, 2016, pet. denied) (mem. op.) (holding that a will clause that states "[i]t is our intention to dispose of all property . . . . This will shall override any prior allocations described in trust documents . . . ." was an insufficient manifestation of intent to revoke the trust).

Similarly, decedent's June 7 e-mail fails to establish that he had the present intent to amend the terms of the trust to include Appellant. Decedent's e-mail states that he has a new payout schedule, which presumably included Appellant, but fails to state that he wanted the new payout schedule to control over the old one immediately. Decedent's e-mail also fails to provide any details as to how decedent wanted the trust to be paid out. Additionally, the June 7 e-mail indicates that decedent did not attach the new payout schedule to the e-mail.

Likewise, decedent's June 17 e-mail also fails to demonstrate that decedent had the present intent to amend the trust. Decedent merely makes an inquiry as to the status of his proposed amendments to his trust. However, this inquiry does not demonstrate that decedent had the present intent to amend his trust because he did not request that the changes requested take effect immediately. *See Jameson v. Bain*, 693 S.W.2d 676, 681 (Tex. App.—San Antonio 1985, no writ) (holding that "decedent's will [bequeathing certain assets to charitable beneficiaries] [did] not contain a definitive manifestation to revoke the inter vivos trust"). Nor did he provide any details regarding his proposed amendments.

Additionally, Appellant contends that the e-mails decedent sent to Northern Trust establish that he intended to amend his trust to include Appellant as a

11

beneficiary. In relevant portion, decedent's e-mail conversation with Northern Trust is as follows:

> [Decedent sent the following on February 15, 2018] Thank you for taking the time and meeting with Jay and I. The meeting set my mind at ease and I feel . . . confident that your firm is handling my affairs. Rest assured that I have sent Joe Cioffi an e-mail explaining what I wanted changed and implemented right away. I will keep you all in the loop as to the progress of the POA.

> [Northern Trust responded on February 16, 2018] Edward, it was very good to see you and meet Jay as well. I am glad you are feeling better and hope you continue to improve. We look forward to assisting in the completion of your estate plan.

> [Northern Trust followed up on February 23, 2018] Hello Edward, It was nice to see you last week! We had a productive meeting. I just wanted to follow up and see if you have been able to execute some of your changes to your POA and trust yet? If there is anything at all I can help with, please let me know.

As with decedent's e-mails to Cioffi, each of the e-mails decedent sent to Northern Trust was sent from his personal e-mail account.

Decedent's e-mail to Northern Trust fails to demonstrate that he had the present intent to amend the terms of his trust to include Appellant as a beneficiary. In the e-mail, decedent merely stated that he had e-mailed his attorney, Cioffi, and informed him of his discussion with Northern Trust. The February 15 e-mail to Northern Trust references the February 15 e-mail that decedent sent to Cioffi—an e-mail that made no reference to making Appellant a beneficiary of the trust. Therefore, we conclude that neither Appellant's e-mails to Cioffi nor his e-mails to Northern Trust were sufficient to amend the terms of the trust.

A case that informs our determination that decedent's e-mails are insufficient to amend the terms of his trust is *Runyan v. Mullins*. In that case, the settlor executed the trust in 1978. 864 S.W.2d 785, 787 (Tex. App.—Fort Worth 1993, writ denied). In July of 1991, the trustee sent a letter to the attorney for the trust with a proposed

12

amendment to the trust. *Id.* On August 9, 1991, the trustee sent the settlor a letter regarding a proposed amendment to the trust. *Id.* Additionally, the letter instructed the settlor to sign a copy of the August 9 letter and the July letter if he wished to adopt the proposed amendments. *Id.* However, the trustee failed to include the actual terms of the proposed amendment, a copy of the July letter, and a copy of the August 9 letter in the original August 9 letter. *Id.* Four days later, the Trustee sent another letter to the settlor that enclosed a copy of the August 9 letter. *Id.* The settler returned a signed copy of the August 9 letter. *Id.* However, the settlor passed away before he was able to sign the proposed amendment or the July letter. *Id.* The Fort Worth Court of Appeals held that, "[a]t best," the August 9 letter "expressed a possible intent to amend the trust, but did not contain or reflect the terms of any such intended amendment or provide the trustee with instructions regarding the same." *Id.* at 790. Accordingly, the court determined that the August 9 letter was not a clear manifestation of the settlor's intent to modify the trust. *Id.*

Here, decedent's e-mails to Cioffi and Northern Trust manifested a possible intent to amend the terms of his trust, but not a clear manifestation to do so. *See id.* First, much of the language decedent used in his e-mails did not indicate that he wished to immediately amend the terms of the trust. Rather, decedent manifested an intent to do so in the future. Second, decedent did not provide the exact terms of the modification that he wished to make. Therefore, we conclude that the e-mails were insufficient to amend the terms of decedent's trust.

Next, Appellant contends that the Designated Beneficiary Plan Agreement with Charles Schwab (the form) amended the trust to include Appellant as a beneficiary.[9] Appellee responds that this form did not make Appellant a beneficiary of the trust for two reasons. First, because Appellant did not introduce the form into

---

[9]There are two different versions of this form included within the record.

13

evidence at trial, he cannot rely on it here on appeal. Second, Appellee contends the uncontroverted evidence established that the form was forged.

We begin with Appellee's first contention. Generally, the scope of appellate review is limited to the materials that were before the trial court at the time the trial court issued its ruling. *In re Marriage of Skarda*, 345 S.W.3d 665, 670 (Tex. App.—Amarillo 2011, no pet.) (citing *Barnard v. Barnard*, 133 S.W.3d 782, 789 (Tex. App.—Fort Worth 2004, pet. denied)). Appellate courts will not consider matters that are outside the record. *See Barnard*, 133 S.W.3d at 789 (citing *Reyes v. Reyes*, 946 S.W.2d 627, 630 (Tex. App.—Waco 1997, no writ)).

Appellee relies on the following statement from Appellant's trial counsel to support the contention that the form should not be considered in our analysis:

> We have amended the pleading not to include that document or any mention of that document. So any moving forward on that, I have no problem with the Court entering an order saying [Appellant] is not entitled to any relief pursuant to that document.
>
> . . . .
>
> . . . [Appellant] is not relying on that document. We will stipulate that that is not a document that we are going to proceed on at the trial of the case.

When Appellant's trial counsel stated that Appellant was no longer relying on "the form," he was referring to the form found in Defendant's Exhibit No. 22. Another, separate version of this form can be found in the record as Defendant's Exhibit No. 23. Therefore, we will only consider Exhibit No. 23 in our analysis.

During the motion in limine trial, Appellee's expert testified that Exhibit No. 23 was an "electronic PDF, fill-in form." The signature date on Exhibit No. 23 indicates that decedent signed the form on June 25, 2018. However, the testimony from Appellee's expert established that Charles Schwab did not make this particular form available to the public until July of 2018. Additionally, the expert testified that

14

the metadata associated with Exhibit No. 23 indicates that this form was not created until September 5, 2018, nearly a month after Decedent passed away.[10] Accordingly, there was strong evidence that it was impossible for Exhibit No. 23 to have amended decedent's trust because it was executed—allegedly by decedent—after decedent's death.

Even if we did consider Exhibit No. 22 in our analysis, it would still be insufficient to amend decedent's trust. Appellee's expert testified that Exhibit No. 22 is a "printer-to-paper scan back to PDF version" of the Charles Schwab form. Like Exhibit No. 23, Exhibit No. 22 suggests that decedent signed the form before Charles Schwab made the form available to the public. Appellee's expert testified that Exhibit No. 23 was the source document for Exhibit No. 22. Additionally, he testified that the purported handwritten entries on Exhibit No. 22 directly match those of Exhibit No. 23, indicating that there was no actual handwriting on Exhibit No. 22.

Appellant also cites to several of decedent's handwritten notes as evidence of decedent's intent to make Appellant a beneficiary under the trust. The notes, in relevant portion, are as follows:

> Find Joe Cioffi['s] cell phone number[.]
> Find Family Law Attorney ASAP to re-do Trust Document[.]
> Write Codicil to Ed's Will and do a Personal Contract Between Ed [and] Jay stipulating our Personal Agre[e]ment. Complete by Tuesday[.]

These handwritten notes suffer from many of the same flaws as decedent's e-mails. These notes fail to demonstrate that decedent had the present intent to amend the

---

[10]Shortly after decedent's death, Appellant e-mailed the form contained in Exhibit No. 23 to Ray Hawkins. In relevant portion, Hawkins responded that "[j]oint [t]enants with [r]ight of [s]urvivorship is checked, but the [a]ccount [h]older is specified as 'Edward R. Schauble Trust.' Both of those cannot be true at the same time. A trust cannot be a joint tenant, based on what I know." Appellant responded by saying: "Well that's a roadblock I am not in the trust [] what do we do now?"

terms of the trust. Additionally, these notes provide no details regarding the nature of decedent's desired changes. At best, these notes reflect that Appellant had an interest in amending his trust, but no present intent to do so. Thus, we conclude that decedent's handwritten notes were insufficient to amend the trust.

On appeal, Appellant also relies on an affidavit from Sheryl James to show that decedent clearly manifested the intent to amend his trust to include Appellant as a beneficiary. However, James's affidavit was not offered into evidence at the trial on the motion in limine, and she did not testify. Accordingly, it has no bearing on our review of the sufficiency of the evidence offered at trial. *See Francis*, 46 S.W.3d at 242 (defining the scope of review for a factual sufficiency challenge). Moreover, in James's affidavit, she claims that decedent told her on multiple occasions that he wished to include Appellant as a beneficiary under the trust. However, the affidavit, and the oral conversations, are irrelevant to our analysis. As stated previously, in order to revoke or amend the terms of the trust, decedent must have manifested a clear intent to amend the trust in writing. Accordingly, decedent's conversations with James expressing any intent to amend his trust were ineffective. *See Emps.' Ret. Fund of City of Dallas*, 636 S.W.3d at 696 (noting that a trust may only be amended in accordance with the terms of the trust).

The evidence supporting Appellant's claim that decedent sufficiently amended his trust to make Appellant a beneficiary of the trust was not so great as to make the trial court's contrary determination to be against the great weight and preponderance of the evidence. *See id.* Therefore, we overrule Appellant's first issue.

*Motions to Compel and Motions for Continuance*

In Appellant's second issue, he contends that the trial court abused its discretion when it denied his motions to compel and motions for continuance. We will first address Appellant's motions to compel. "We review a trial court's order

16

denying a motion to compel under an abuse of discretion standard." *Cline v. Guaranty Bond Bank*, 404 S.W.3d 139, 142 (Tex. App.—Texarkana 2013, no pet.) (citing *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009)). Under an abuse of discretion standard, we cannot substitute our judgment on factual issues for that of the trial court unless it is clear from the record that the trial court could reach only one decision. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992). Additionally, "appellate court[s] defer[] to a trial court's resolution of underlying facts and to credibility determinations that may have affected its determinations, and will not substitute its judgment for that of the trial court." *Interest of K.A.M.S.*, 583 S.W.3d 335, 341 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (citing *Walker*, 827 S.W.2d at 839–40).

At the root of the trial court's denial of Appellant's motions to compel production is a credibility determination. Specifically, the trial court was required to determine the credibility of Appellee's trial counsel when he stated that Appellee provided Appellant all the requested documents in Appellee's possession. Thus, to reverse the trial court's denial of Appellant's motions to compel, there would have to be clear evidence that Appellee withheld requested documents from Appellant.

Appellant alleges that Appellee withheld documents from Appellant, but there is no clear evidence that Appellee actually withheld any documents. In Appellant's first motion to compel, he essentially asserted that Appellee failed to produce all the documents from eight boxes that decedent's children removed from one of decedent's homes. However, Appellant's motion does not provide clear evidence to contradict Appellee's claim that he provided Appellant all the documents that Appellee possessed.

Appellant's second motion to compel made many of the same contentions as his first motion. However, in this motion, Appellant provided additional details as to what sort of documents were in the eight boxes that Appellee allegedly did not

17

provide. Appellant's second motion contains allegations that Appellee did not supply all the documents he had in his possession, but it does not rise to the level necessary to disturb the trial court's credibility determination that Appellee had not withheld requested documents from production.

During the first hearing on Appellant's motion to compel, Appellant made many of the same contentions that were contained in both of his motions to compel. During the second hearing on Appellant's motion to compel, Appellant reiterated that he believed that Appellee did not produce all the documents contained in the eight boxes. As with the first hearing, Appellant merely made allegations that Appellee withheld documents during discovery. These allegations are insufficient to overturn the trial court's credibility determination that Appellee had not withheld requested documents from discovery. Furthermore, at the close of the second hearing on the motion to compel, the trial court noted that Appellant should have been more diligent in presenting his motions to compel to the trial court for action rather than waiting until the morning of trial. On this record, the trial court did not abuse its discretion by overruling Appellant's motions to compel.

Next, Appellant contends that the trial court erred by denying his motion for continuance. Specifically, Appellant contends that he needed more time to conduct discovery to obtain the documents from the eight boxes that Decedent's children purportedly removed from his residence. Thus, Appellant's appellate contentions about the motions for continuance are largely the same as those for his motions to compel.

We review a trial court's denial of motions for continuance under an abuse of discretion standard. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). When analyzing a trial court's denial of a motion for continuance, we will not substitute our judgment for that of the trial court. *Tobias v. SLP Brownwood LLC*, No. 11-19-00247-CV, 2021 WL 2584505, at *1 (Tex. App.—Eastland June 24,

2021, no pet.) (mem. op.) (citing *In re Nitla S.A. de C.V.*, 92 S.W.3d 419,422 (Tex. 2002) (orig. proceeding)). Rather, "we must determine whether the trial court's discretion was so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law." *Id.* (citing *Joe*, 145 S.W.3d at 161). An abuse of discretion occurs when the trial court acts "without reference to guiding rules or principles." *Id.* (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)).

Appellant filed this case on March 15, 2019. Appellee included a motion in limine with his original answer that he filed on April 3, 2019. Appellee filed his motion for traditional summary judgment on April 13, 2020. The hearing on Appellee's motion for summary judgment and the bench trial on Appellee's motion in limine were both set for May 4, 2020. Appellant subsequently filed two motions for continuance on April 29, 2020. The first motion for continuance addressed the hearing on Appellee's motion for summary judgment. The second motion addressed the trial on the motion in limine. In the second motion, Appellant asserted that he needed a continuance for the trial on the motion in limine on the sole basis that he had a disagreement with his attorneys. In that regard, Appellant's attorneys filed a motion to withdraw on the same date.

On May 18, 2020, the matters set for hearing and trial on May 4, 2020, were reset for June 8, 2020. One of Appellant's original attorneys represented him at the proceedings on June 8, 2020.[11] At the outset of the hearing, the trial court denied Appellee's motion for summary judgment. Accordingly, Appellant did not suffer harm based on the implicit denial[12] of his motion for continuance pertaining to the motion for summary judgment because the trial court ultimately ruled in his favor

---

[11]The trial court entered an order on May 21, 2020, permitting Appellant's original attorneys to withdraw. However, one of the original attorneys filed a notice of appearance on June 4, 2020, and he represented Appellant at the proceedings on June 8, 2020.

[12]The record does not reflect that the trial court explicitly ruled on either of Appellant's motions for continuance.

on the motion for summary judgment. Additionally, the sole basis for Appellant's second motion for continuance was rendered moot because he was represented by one of his original attorneys at the bench trial on the motion in limine.

To the extent that Appellant sought a continuance on the basis that he needed more time to find documents to support his status as a trust beneficiary, the trial court essentially considered Appellant's contention with respect to its consideration of Appellant's motions to compel. As we have previously noted, the trial court determined that Appellee had not withheld documents in his possession from discovery. The trial court also noted that Appellant had ample time to obtain the necessary discovery in order to prepare for trial. Accordingly, the trial court did not abuse its discretion by overruling Appellant's motions for continuance. We overrule Appellant's second issue.

*Evidence of Appellant's Criminal Acts*

In Appellant's fourth issue, he contends that the trial court erred by admitting evidence of his criminal history. "Evidentiary rulings are committed to the trial court's sound discretion." *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012) (citing *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (per curiam)). To obtain a reversal of a judgment based on the erroneous admission of evidence, an appellant must show that (1) the trial court's ruling was in error and (2) the error probably caused the rendition of an improper judgment. *Id.*

Appellee's attorney asked Appellant at trial if he "had been caught stealing from at least three different employers." Appellant lodged a relevancy objection to this question. Appellee responded that he sought to offer under Rule 609 evidence of Appellant's felony theft conviction in 2009 of an amount of over $200,000. *See* TEX. R. EVID. 609. The trial court initially excluded the evidence on the basis that its probative value did not outweigh its prejudicial effect. The trial court subsequently permitted Appellee to question Appellant about a restitution order

20

wherein Appellant was ordered to pay $76,474 to a former employer. The trial court also permitted Appellee to question Appellant about the fact that he had been indicted for aggravated perjury. The trial court cited Rule 404(b)(2) as its basis for the admission of this testimony. *See* TEX. R. EVID. 404(b)(2).

Rule 609 of the Texas Rules of Evidence governs the admission of a criminal conviction in a civil case to attack a witness's character for truthfulness. TEX. R. EVID. 609(a); *Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 260–61 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also U.S.A. Precision Machining Co. v. Marshall*, 95 S.W.3d 407, 409 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) ("[c]onvictions for crimes involving felonies may be admissible in civil cases to impeach a witness's credibility for truthfulness"). If more than ten years have elapsed since the witness's conviction or release from confinement, then evidence of the conviction "is admissible only if its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." TEX. R. EVID. 609(b); *see Richard Nugent & CAO, Inc.*, 543 S.W.3d at 261. The impeachment value of crimes involving deception is greater than that for crimes involving violence. *Richard Nugent & CAO, Inc.*, 543 S.W.3d at 261 (citing *Theus v. State*, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992)). "[I]n a civil case, as the importance of a particular witness's testimony and credibility increases, so does the need to allow impeachment of that witness with evidence of a criminal conviction." *Id.* (quoting *Cortez v. Wyche*, No. 02-11-00364-CV, 2012 WL 1555909, at *4 (Tex. App.—Fort Worth May 3, 2012, no pet.) (mem. op.)). Applying these rules to the facts in this case, the trial court did not abuse its discretion by admitting evidence of Appellant's prior conviction for a crime involving deception.

"Evidence of other wrongs or acts is not admissible to prove character in order to show 'action in conformity therewith.'" *Serv. Corp. Int'l v. Guerra*, 348

21

S.W.3d 221, 235 (Tex. 2011) (quoting former TEX. R. EVID. 404). Rule 404(b)(2) lists some exceptions to the general rule, including showing a "plan." Appellee asserted that the evidence of Appellant's indictment for aggravated perjury, as well as the three thefts that he had committed, was admissible to show "a common scheme or plan." But as noted in *Daggett v. State*, the "plan" exception in Rule 404(b)(2) is frequently misidentified as "common scheme or plan." 187 S.W.3d 444, 451 (Tex. Crim. App. 2005). Rule 404(b)(2) does not permit the admission of evidence to show the repeated commission of the same crimes that are similar to the charged offense. *Id.* Evidence of this type would be impermissible "bad" character evidence—to essentially show "once a thief, always a thief." *Id.* Instead, the "plan" exception only allows the admission of evidence to show steps taken by the defendant in preparation of the charged offense. Furthermore, evidence of specific instances of a witness's conduct that do not result in a criminal conviction are not admissible to attack the witness's character for truthfulness. *See* TEX. R. EVID. 608(b).

Assuming, without deciding, that the trial court erred by admitting evidence of Appellant's past criminal acts that did not result in a criminal conviction, we conclude that the error did not cause the rendition of an improper judgment. "In a bench trial, we presume that the trial court, in its role as factfinder, disregarded any improperly admitted evidence." *Richard Nugent & CAO, Inc.*, 543 S.W.3d at 260 (citing *Kenny v. Portfolio Recovery Assocs.*, 464 S.W.3d 29, 32 (Tex. App.—Houston [1st Dist.] 2015, no pet.)). Thus, we presume that the trial court disregarded any improperly admitted evidence of Appellant's prior criminal acts that did not result in a criminal conviction.

The primary consideration in this case is whether decedent made Appellant a beneficiary of the trust prior to decedent's death. At best, the evidence of Appellant's bad acts may have damaged Appellant's credibility. But because a

writing was necessary to amend the terms of the trust, much of Appellant's testimony regarding decedent's intent to make Appellant a beneficiary was irrelevant. The relevant inquiry was whether the writings that Appellant produced demonstrated decedent's present intent to make Appellant a beneficiary under the trust. As we conclude below, they did not. Therefore, we overrule Appellant's fourth issue.

*Award of Attorney's Fees*

In Appellant's third issue, he contends that there was insufficient evidence to for the trial court to award Appellee his attorney's fees. Section 114.064 of the Texas Trust Code authorizes the recovery of attorney's fees in an action involving a trust. TEX. PROP. CODE ANN. § 114.064 (West 2014) ("In any proceeding under this code the court may make such award of costs and reasonable and necessary attorney's fees as may seem equitable and just."). An award of attorney's fees under this section "is within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's judgment absent a clear showing that the trial court abused its discretion by acting without reference to any guiding rules and principles." *Hachar v. Hachar*, 153 S.W.3d 138, 142 (Tex. App.—San Antonio 2004, no pet.); *see Lee v. Lee*, 47 S.W.3d 767, 793–94 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

Essentially, Appellant contends that the trial court erred because Appellee's affidavits in support of his motion only provided generalities of the work that Appellee's counsel performed on the case. In support of this contention, Appellant asserts that Appellee did not provide sufficient evidence to recover attorney's fees under a lodestar calculation.

Texas uses the "lodestar method," which is essentially a "short hand version" of the *Arthur Andersen* factors, to determine reasonable and necessary attorney's fees. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019); *see Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812,

818 (Tex. 1997). Under the lodestar method, the factfinder must first determine the reasonable hours spent by counsel and the reasonable hourly rate for counsel's work. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 760 (Tex. 2012). The factfinder then multiplies the number of hours that counsel worked on the case by the applicable rate to determine the base fee or lodestar. *Id.* The base fee is presumed to reflect the reasonable and necessary attorney's fees. *Rohrmoos Venture*, 578 S.W.3d at 499. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee in the case. *Id.* at 500–501.

It is the fee claimant's burden to provide sufficient evidence of both the reasonable hours worked and the reasonable hourly rate. *Id.* at 498. "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.*

"General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. Generalities about tasks performed provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary. *El Apple I*, 370 S.W.3d at 764. While contemporaneous billing records are not required, there must be some evidence to inform the trial court of the time spent on specific tasks to enable the factfinder to meaningfully review the requested fees. *Rohrmoos Venture*, 578 S.W.3d at 502; *Long v. Griffin*, 442 S.W.3d 253, 253, 255 (Tex. 2014) (per curiam); *City of Laredo v. Montano*, 414 S.W.3d 731, 736–37 (Tex. 2013) (per curiam) (reversing and remanding to determine attorney's fees when attorney testified to the time expended and the hourly rate but failed to provide evidence of the time devoted to specific tasks).

We begin our analysis of Appellant's third issue by noting that his brief failed to discuss the invoices included within Appellee's motion to supplement the record, which Appellee had filed in the trial court. Initially, Appellee supported his motion for attorney's fees and costs with an affidavit from Appellee's attorney, Joseph R. Marrs, and testimony from Marrs. Prior to the trial court entering its judgment, Appellee supplemented the record with a detailed invoice describing the work Appellee's counsel performed on the case.

As stated previously, the trial court granted Appellee's motion for costs and fees. In reaching this conclusion, the trial court stated it considered "the pleadings, filings and all evidence before it" in reaching its conclusion. In general, when a trial court states that "it considered the 'evidence and arguments of counsel,' without any limitation, [that] is an 'affirmative indication' that the trial court considered" all the evidence before it prior to entering its judgment. *B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 261 (Tex. 2020). Thus, we cannot conclude that the trial court disregarded the invoices that Appellee included with his motion to supplement the record.

Appellee's evidence was sufficient to support the trial court's award of attorney's fees and costs. The attorney invoices that Appellee supplied the trial court in his motion to supplement the record provided evidence of the date on which the task was completed, who completed the task, the hours it took to complete the task, the hourly rate for such task, and a description of the work completed. Additionally, the invoices provided that the total amount of attorney's fees was $361,137.50. Moreover, each description sufficiently describes each task that was performed. Thus, the invoices satisfied the first three requirements of *Rohrmoos Venture*. *See Rohrmoos Venture*, 578 S.W.3d at 498.

Marrs's affidavit sufficiently satisfies the other two requirements of *Rohrmoos Venture*. Marrs averred as follows:

1. *The time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal services properly*—The time and labor required in this matter are reflected in the attached billing records. The novelty and difficulty of the questions involved have been considerable, given Plaintiff's shifting rationales and forged documentation (requiring forensic-expert consultation to rebut). For the same reasons, it has required considerable skill and expertise to properly perform the legal services involved in this case.

   . . . .

3. *The fees customarily charged in the area for similar legal services*—I am personally familiar with the fees customarily charged by Houston attorneys for similar legal services. My firm's fees are in line with them.

   . . . .

5. *The time limitations imposed by the client or by the circumstances*—My firm was the third to represent this client. [Appellant] filed multiple pleadings and motions shortly before hearings were set to occur, which required my firm to turn out responsive work product within very tight timeframes.

(Emphasis in original). Marrs's affidavit provided specific details as to the conditions under which much of the work on this case was performed. Marrs noted that many of the tasks completed in this case were done under serious time constraints. Marrs also detailed how he was familiar with the hourly rates in the Houston area and how the rates in his firm were in line with those rates. Additionally, Marrs detailed his experience level and the experience level of each attorney in his office that worked on this case. Thus, we conclude that the final two requirements under *Rohrmoos Ventures* are satisfied.

A case that informs our analysis of this issue is *Jurgens v. Martin*. In that case, the only evidence to support the award of attorney's fees was five affidavits from attorneys involved in the case. 631 S.W.3d 385, 418–19 (Tex. App.—Eastland 2021, no pet.). We held that the evidence was insufficient because the "affidavits did not discuss the particular services performed, who performed the services, the reasonable amount of time required to perform the services, or the reasonable hourly rate for each attorney performing the services." *Id.* Here, the combined forces of Appellee's invoice summary and Marrs's affidavit provided the details that the affidavits in *Jurgens* failed to provide. Accordingly, we affirm the trial court's award of $358,692.

Appellant also argues that the evidence was insufficient to support the trial court's award of $88,750 in the event that Appellant lost on all points on appeal. Generally, "[a]n award of [contingent] appellate attorney's fees to a party is essentially an award of fees that have not yet been incurred." *Yowell v. Granite Operating Co.*, 620 S.W.3d 335, 355 (Tex. 2020) (quoting *Ventling v. Johnson*, 466 S.W.3d 143, 156 (Tex. 2015)). In order for a party to recover contingent appellate fees, the party must "provide opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

Marrs's affidavit provides the following testimony regarding the conditional services Appellee's attorneys would have to perform in the event of an appeal:

> The plaintiff has filed a notice of appeal. My firm and I have substantial experience representing clients in appeals, including briefing, drafting, and arguing appellate issues and advising clients in appellate and other post-judgment matters. In my experience, I would anticipate the following reasonable and necessary attorneys' fees to handle this appeal:
>
> First or Fourteenth Court of Appeals: Zev Kusin: 100 hours ($425/hour); Joseph Marrs 50 hours ($475/hour); Vaibhavi Parmar 75

27

hours ($250/hour); Maria Mandujano 30 hours ($75/hour), for a total of $87,250, plus $1,500 in costs, for a total of $88,750.

Due to the speculative nature of conditional awards for attorney's fees and costs, we conclude that Marrs's affidavit meets the requirements of the standard set forth in *Yowell*. *See id.* In his affidavit, Marrs establishes that his firm has significant experience handling all aspects of an appeal. Additionally, drawing from that experience, Marrs sets forth the time he anticipated it will take for his firm to handle this appeal. Accordingly, we overrule Appellant's third issue.

### *Appellee's Motion for Rule 45 Damages*

Appellee has filed a motion seeking damages under Rule 45 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 45. In support of the motion, Appellee asserts that Rule 45 damages are warranted "because Appellant and his attorney are trying to deceive the Court." He points to the use on appeal of "forged documents" that Appellant "disavowed" in the trial court. Appellee also asserts that Appellant and his attorney "are trying to deceive the Court by concealing crucial parts of the record." Appellee references the detailed attorney's fee invoices that Appellant did not reference in the presentation of his third issue. Appellee seeks damages under Rule 45 in an amount that this court deems just. Appellee contends that an award of damages under Rule 45 should be assessed jointly and severally against Appellant and his attorney.

As recently noted by the First Court of Appeals:

> Rule 45 of the Texas Rules of Appellate Procedure permits an appellate court to award a prevailing party "just damages" for "frivolous" appeals. TEX. R. APP. P. 45; *Smith v. Brown*, 51 S.W.3d 376, 380 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). In determining whether an appeal is frivolous, we apply an objective test. *Smith*, 51 S.W.3d at 381. We review the record from the advocate's viewpoint and ask whether the advocate had reasonable grounds to believe the judgment could be reversed. *Id.* We exercise prudence and caution and deliberate most carefully before awarding appellate

28

sanctions. *Id.* Rule 45 does not mandate that this Court award damages in every case in which an appeal is frivolous. *R. Hassell Builders, Inc. v. Texan Floor Serv., Ltd.*, 546 S.W.3d 816, 833 (Tex. App.—Houston [1st Dist.] 2018, pet. dism'd). Instead, the decision to award damages falls within our discretion, and we will impose such damages only under egregious circumstances. *Id.* (citing *Durham v. Zarcades*, 270 S.W.3d 708, 720 (Tex. App.—Fort Worth 2008, no pet.)).

*Kennard Law, P.C. v. Patton*, No. 01-20-00560-CV, 2022 WL 1547783, at \*1 (Tex. App.—Houston [1st Dist.] May 17, 2022, no pet. h.) (mem. op.).

Applying the factors outlined in *Patton* to the facts in this case, we decline to award Rule 45 damages to Appellee. While we share many of the same concerns raised by Appellee concerning the presentation of Appellant's case on appeal, Rule 45 does not mandate an award of damages in every appeal that is frivolous. Further, Rule 45 provides for an award of "just damages." As set out above, Appellee has already obtained a judgment against Appellant for Appellee's trial and appellate attorney's fees. We decline Appellee's request to make Appellant's attorney jointly and severally liable for damages or fees assessed against Appellant. Accordingly, we deny Appellee's motion for Rule 45 damages.

### This Court's Ruling

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

July 21, 2022

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.